IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERONICA TURNER and<br>KEVIN TURNER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AVCO CORPORATION, TEXTRON INC., | : | NO. 24-715 |
| JAMES T. SMITH, ESQUIRE, | : | |
| REBECCA WARD, ESQUIRE and | : | |
| HEIDI CRIKELAIR ESQUIRE | : | |

**MEMORANDUM AND ORDER OF THE
SPECIAL MASTER**

AND NOW, this 24th day of November, 2024, before the Special Master for

consideration are the following:

(1) Defendants Avco Corporation and Textron Inc.'s Motion for Sanctions for Plaintiffs' Failure to Comply with the Special Master's Order (Doc. No. 116), deferred pursuant to the Order of the Special Master dated September 23, 2024 (the **"Deferred Motion for Sanctions"**), which the Individual Defendants joined by Order dated September 9, 2024 (Doc. No. 120), Plaintiffs' Response (Doc. No. 123), Avco/Textron's Reply (Doc. No. 128), and the Individual Defendants' Reply (Doc. No. 129), and all submissions related thereto, and

(2) Avco/Textron's Motion for Sanctions for Plaintiffs' Deposition Misconduct (**the "Motion"**) (Doc. No. 188), which the Individual Defendants' joined by Order dated September 30, 2024 filed on JAMS Access, Plaintiffs' Response ("Pls.' Resp.") filed on JAMS Access on October 18, 2024, Avco/Textron's Reply ("Avco/Textron's Reply") (Doc. No. 189), and Individual Defendants' Reply ("Individual Defs.' Reply") (Doc. No. 199),[1] and all submissions related thereto.[2]

---

[1]     Consistent with the procedure in this case, the parties shall be referred to herein as follows: (1) Veronica and Kevin Turner – the "Plaintiffs;" (2) Avco Corporation and Textron, Inc. – "Avco/Textron;" and (3) James T. Smith Esquire, Rebecca Ward, Esquire and Heidi Crikelair, Esquire – collectively, the "Individual Defendants." Avco/Textron and the Individual Defendants may be collectively referred to herein as the "Defendants."

[2]     In addition to the transcripts for the depositions at issue herein, Defendants also submitted video clips from the depositions, which the Special Master reviewed and considered.

1

Oral argument on the Deferred Motion for Sanctions and the Motion was held on October 24, 2024 (the "Hearing"). See Special Master's Order dated October 8, 2024. The Special Master issues this ruling pursuant to the Order of the Honorable Timothy J. Savage dated June 11, 2024.[3] For the reasons set forth herein[4], the Deferred Motion for Sanctions is **DENIED** and the Motion is **GRANTED IN PART** and **DENIED IN PART**.[5]

## I.   INTRODUCTION

**A.   The Deferred Motion for Sanctions.** Avco/Textron filed the Deferred Motion for Sanctions to compel further deposition testimony of Plaintiff Veronica Turner and for sanctions based on Plaintiffs' failure to comply with the Special Master's August 14, 2024 Order (Doc. No. 102), requiring Plaintiffs to produce documents and information in advance of Plaintiffs' depositions. By order dated September 23, 2024, the Special Master ordered Plaintiff Veronica Turner to sit for an additional deposition.[6] The Special Master deferred the request for sanctions until after the completion of Plaintiff's continued deposition.

---

[3]   Pursuant to the Order of Judge Savage dated June 11, 2024, the undersigned was appointed Special Master "to resolve all discovery disputes." (Doc. No. 66.) In accordance with this Order, the Special Master will consider the referred discovery motions exercising the powers outlined in paragraph 1 thereof and issue a "ruling." Id. at ¶¶1, 6. If the parties accept the ruling, "they shall confirm the same by letter to counsel and the Special Master within two days." Id. at ¶6. The parties shall file their letter notifying the Special Master of their acceptance or non-acceptance of this Order on JAMS Access. "If the ruling is not accepted by a party, the Special Master shall submit a report and recommendation." Id. at ¶7.

[4]   The Special Master has not addressed herein every issue/argument raised by the parties in their submissions. In issuing this Order, the Special Master has carefully considered all submissions of the parties, including all arguments raised therein and attachments thereto.

[5]   For the purposes of this Order, the term "Underlying Litigation" shall mean the litigation captioned Avco Corp. v. Turner, C.A. No. 20-4073 (E.D. Pa.).

[6]   Defendants did not request specific additional testimony from Plaintiff Kevin Turner. Defendants were afforded an opportunity to petition the Special Master if they desired to

Plaintiffs did not accept the Special Master's September 23, 2024 Order, so the Special Master issued a Report and Recommendation dated September 30, 2024 (Doc. No. 133). By Order dated October 9, 2024 (Doc. No. 152), after objections, Judge Savage approved and adopted the Report and Recommendation and denied without prejudice the Deferred Motion for Sanctions. Oral argument on the Deferred Motion for Sanctions was presented at the Hearing. Plaintiffs assert that the Deferred Motion for Sanctions is no longer before the Special Master because it was denied without prejudice by Judge Savage and not refiled by Defendants. The Special Master, to confirm that all outstanding issues are resolved before the upcoming trial, will address the Deferred Motion for Sanctions herein.

**B.** **The Motion.** Also before the Special Master is Avco/Textron's Motion seeking sanctions for discovery misconduct based on Plaintiffs Veronica and Kevin Turner's

> repeated frustration of a fair deposition examination resulting from (1) Plaintiffs' hostile and uncivil deposition conduct, which included unnecessary and unwarranted personal attacks on defense counsel; (2) Plaintiffs' failure to answer and intentionally evasive answers[;] and (3) Ms. Turner's improper invocation of the attorney-client privilege.

(Motion at 1.) Defendants seek the following sanctions: (1) strike Ms. Turner's claim for reputational harm; and (2) an award of attorneys' fees and costs associated with their three attempts to take Ms. Turner's deposition and two attempts to take Mr. Turner's deposition, and fees and costs associated with filing and pursuing the Motion. (Motion at 53.)

**II.    DISCUSSION**

**A.    The Deferred Motion for Sanctions.** In the Deferred Motion for Sanctions, Defendants seek sanctions based on Plaintiffs' failure to comply with the Special Master's

---

examine Mr. Turner on any of the topics addressed at Ms. Turner's continued deposition. See Order of the Special Master dated September 23, 2024 at 2 n.4.

August 14, 2024 Order (Doc. No. 102), requiring Plaintiffs to produce certain documents and information in advance of Plaintiffs' depositions. The documents/ information Plaintiffs were ordered to produce no later than August 15, 2024 included, inter alia, medical authorizations, the Of Counsel Agreement between her and The Wolk Law Firm (the "Wolk Of Counsel Agreement"), and documents related thereto, and tax returns. At the Hearing, Plaintiffs' counsel represented that all documents in Plaintiffs' possession identified in the Special Master's August 14, 2024 Order were produced. One medical authorization was at issue for Plaintiff Veronica Turner from Paoli Hospital. By Order dated October 25, 2024, Plaintiffs were ordered to provide the Paoli Hospital authorization executed by Ms. Turner to Defendants no later than October 28, 2024. Defendants have not notified that Special Master that the Paoli Hospital authorization was not provided as ordered.

Defendants' counsel remain dissatisfied with Plaintiffs' counsel's representation that all documents have been produced, describing their uncertainty regarding the thoroughness of Plaintiffs' search for responsive documents. By way of example, Defendants note that Plaintiffs produced only one page of a tax return. See Hearing Tr. at 25 (Mr. Tarantino stating: "I do not understand how you can have a portion of your tax return. You can have the cover sheet, the electronic filing sheet and not the tax return itself."). Mr. Tarantino further explained Defendants' concerns as follows:

> The problem that we had then and I still have now is what does it mean I have no more documents? Does it mean I can't find any more documents, does it mean I haven't looked for any more documents. All we know from her depositions is she didn't look for any documents until the morning – the evening before that deposition. So even though she had responded in discovery saying no documents exist, when she was deposed and asked about that, she said she began looking for the documents the evening before the deposition and she described sort of the disarray of her record keeping. That she just threw things in boxes . . . but it was like, "That's not my fault, . . ., my records are in disarray, and you know if I don't [sic] them, can't find them, I can't find them."

(Hearing Tr. at 22-23.)

As noted above, Plaintiffs' counsel represented at the Hearing that Plaintiffs produced all documents identified in the Special Master's August 14, 2024 Order. With respect to the tax returns, Plaintiffs' counsel explained that Plaintiffs had not filed certain tax returns:

> [Ms. Turner] told them she knew she did not have certain records. Mr. Tarantino says, "Oh, I can't believe she only has the first page of her tax return." That's what she has. That's what she gave them. She didn't file the other returns. They didn't tell you she testified to that. She cannot give them what she doesn't have, She can't produce medical records that don't exist. Tax returns that don't exist that have not been filed.

(Hearing Tr. at 43.)

Despite Defendants' understandable frustration with the course of Plaintiffs' production, Mr. Tarantino acknowledged that "[t]here's not much that I can do other than accept the representation that [Ms. Turner] made under oath that she has no more documents." Id. at 22. Given the representations by Plaintiffs' counsel and by Ms. Turner under oath that all documents/ information have been produced in compliance with the August 14, 2024 Order, the Special Master finds no basis to grant the Deferred Motion for Sanctions and award sanctions. The Deferred Motion for Sanctions is **DENIED.**

B.   **The Motion.**

(1) **Federal Rule of Civil Procedure 30(d)(2).** Rule 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent" during a deposition. A deponent's own behavior may "impede[], delay[], or frustrate[] the fair examination," and warrant the imposition of sanctions under Rule 30(d)(2).

5

See GMAC Bank v. HTFC Corp., 248 F.R.D. 182, 193 (E.D. Pa.), reconsid. denied, 252 F.R.D. 253 (E.D. Pa. 2008)

"The imposition of sanctions under Rule 30(d)(2) requires the movant to identify language or behavior that impeded, delayed, or frustrated the fair examination of the deponent." Carroll v. Allstate Fire and Cas. Ins. Co., 2014 WL 859238, at *8 (D. Colo. Mar. 4, 2014). "When making this inquiry, the court will look to: (1) the specific language used (e.g., use of offensive words or inappropriate tones); (2) the conduct of the parties (e.g., excessive objections or speaking objections); and (3) the length of the deposition. Second, the movant must identify 'an appropriate sanction.'" Id. (quotation omitted). See also Farabaugh v. Isle, Inc., 2024 WL 216675, at *3 (D. Colo. Jan. 19, 2024) (quoting Carroll, 2014 WL 859238, at *8).

**(2) Plaintiff Veronica Turner's Depositions.** Ms. Turner is an attorney and has had a long career as a litigator. All of Ms. Turner's depositions were remote. Ms. Turner's first deposition was conducted on August 15, 2024 ("Ms. Turner's First Deposition"). The transcript of Ms. Turner's First Deposition is attached to the Motion as Exhibit A. In response to Defendants' request for an in-person deposition, Ms. Turner stated that she was unable to travel due to her mental health; the undesigned ordered and Defendants agreed to take Ms. Turner's deposition remotely and, if unproductive, the deposition would be continued in-person. Ms. Turner made personal attacks against Defendants' counsel and refused to answer questions concerning, inter alia, (1) three lawsuits she brought against her former law firm, Saltz Matkov P.C. and others in 2016 (the "Pennsylvania Lawsuits"), on the grounds that a confidential settlement agreement prohibited the testimony; (2) the Wolk Of Counsel Agreement; and (3) a civil contempt motion filed against her in Allen v. Campbell, No. 4:20-CV-00218 (D. Idaho) and

6

related proceedings in Idaho (the "Idaho Lawsuits"). (Motion at 2.) The parties agreed that the deposition would be continued. (V. Turner Dep., Aug. 15, 2024, at 263.)

Ms. Turner's second deposition was conducted over two days on September 5 and 6, 2024 ("Ms. Turner's Second Deposition"). The transcripts of Ms. Turner's Second Deposition are attached to the Motion at Exhibits C and D. In her second deposition, Ms. Turner continued to, inter alia, lodge personal attacks against Defendants' counsel, prolong and delay the deposition, and refuse to answer questions. (Motion at 4.) By Order dated October 9, 2024, Judge Savage directed that Ms. Turner sit for a continued deposition for an additional two hours. (Doc. No. 152.)

Ms. Turner's third deposition was conducted on October 15, 2024 ("Ms. Turner's Third Deposition"). The transcript of Ms. Turner's Third Deposition is attached to Avco/Textron's Reply at Exhibit B. In her Third Deposition, Ms. Turner continued to, inter alia, lodge personal attacks against Defendants' counsel, prolong and delay the deposition, and refuse to answer questions. (Avco/Textron Reply at 2.)[7]

(i) **Ms. Turner's Unprofessional and Uncivil Behavior Impeded, Delayed and Frustrated the Fair Examination of Ms. Turner During Her Depositions.** In the Motion and their Replies, Defendants identify many instances of "specific language" and "conduct" by Ms. Turner at her depositions that "impede[d], delay[ed], or frustrate[d] the fair examination" of Ms. Turner at her three depositions. The Special Master has considered all of the instances of alleged

---

[7]    Plaintiffs' counsel asserts that Ms. Turner's appearance at the third deposition "cured" the issues raised in the Motion. (Pls.' Resp. at 3-4.) The transcript from Ms. Turner's Third Deposition reveals that Ms. Turner's misconduct continued; her testimony at the third deposition served to highlight her misconduct during the discovery/deposition stages of this litigation. See Avco/Textron's Reply at 13-23.

misconduct by Ms. Turner identified by Defendants in their submissions and finds that (1) Ms. Turner's behavior at her depositions was unprofessional, uncivil and hostile; and (2) the instances of Ms. Turner's behavior identified by Defendants, individually and in combination, "impede[d], delay[ed], or frustrate[d] the fair examination" of Ms. Turner at her three depositions.

The Special Master details below several of these instances as examples of Ms. Turner's misconduct and refers to the Defendants' submissions for a more fulsome presentation of Ms. Turner's inappropriate behavior.[8]

### (a) **Ms. Turner's Personal Attacks Against Counsel**.

- A. [Ms. Turner] I did, as I find unacceptable Ms. Benjamin lied to the court in pleadings, as well as the Blank Rome attorney lied to the court in this case unacceptable and unethical . . . So, you know what, everybody does and makes mistakes. Ms. Benjamin has lied. The Blank Rome attorneys and defense have lied. You know what, this is the way they practice. That's not the way I practice. (V. Turner Dep., Aug. 15, 2024, at 71-72.)

- Q. [Mr. Paszamant] Does Mr. Bradley work for Blank Rome?

---

[8]     Plaintiffs' counsel asserts that Defendants counsel were "well aware that Mrs. Turner suffers from mental health issues, including but not limited to post traumatic stress disorder and anxiety." (Pls.' Resp. at 3.) Plaintiffs' counsel continued that: "Her conduct at deposition was nothing more than a manifestation of these conditions under stress. Indeed, defense counsel's demeanor demonstrated it was their intention to exacerbate her condition and elicit behavior that would allow them to make a trumped-up 'sanctions' claim – just as they have now done." Id. (emphasis deleted). Ms. Turner disclosed at the beginning of Ms. Turner's First Deposition that she suffers from panic attacks and anxiety. (V. Turner Dep., Aug. 15, 2024, at 8.) Ms. Turner denied suffering from these conditions at the time of that deposition. Id. at 16. Avco/Textron counsel invited Ms. Turner to let them know if she experiences these conditions during the deposition; Ms. Turner responded, "I will." Id. Ms. Turner did not inform Defendants' counsel that she experienced these symptoms during Ms. Turner's First Deposition. At the beginning of Ms. Turner's Second Deposition, counsel for Avco/Textron again asked Ms. Turner whether, in light of her "anxiety issues and some breathing issues," she was "okay to go forward today?" Ms. Turner responded: "I am. You're getting me on a good day. Lucky for you." (V. Turner Dep., Sept. 5, 2024, at 6.) Moreover, review of the transcripts and video clips from Ms. Turner's depositions reveal that Defendants' counsel behaved in a professional and patient manner under difficult circumstances.

A. [Ms. Turner] Yes, Sir. I'm sorry. Are you really a litigator? You don't understand defamation.

[Plaintiffs' Counsel – Mr. Ely] Just answer the question.

[Ms. Turner] I can't answer these questions anymore. They're ridiculous. Seriously, I can't.

Q. Is Patrick Bradley with Blank Rome?

A. He's with Reed Smith, and you know that.

(V. Turner Dep., Aug. 15, 2024, at 252-53.)

- A. [Ms. Turner] Good morning, Mr. Tarantino. Before we begin, I just want you to know that I hope you are applauding the attorney that you sent to depose my children, who tortured and distressed them for which I blame you and for which a line was crossed. Now I'm ready to proceed.

  (V. Turner Dep., Sept. 5, 2024, at 6.)

- Q. [Mr. Tarantino] You've already said you filed this statement. It is what it is. . . . But several times you just said it wasn't Textron. It was Avco. In this litigation you filed a declaration saying you never represented Avco, right?

  A.[Ms. Turner] Sir, I'm not –

  [Mr. Ely] Objection to form.

  A. I'm no there to argue with you. If you want to believe and twist and turn and lie, because we know Nicole Benjamin, so what the heck. It says what it says.

  Q. First of all, I put up with a lot of your statements today. I'm not putting up with [an allegation] that Nicole Benjamin lies.

  A. Oh, I've got plenty of proof of that. Believe me.

  [Mr. Ely] Veronica, wait for a question.

  Q. This is your deposition. This is not your right to engage [in invective] against anyone, Ms. Turner. Please.

  A. Too bad.

  [Mr. Ely] Wait for the question.

  A. I lived for four years with that.

  (V. Turner Dep., Sept. 5, 2024, at 95-96.)

- Q. [Mr. Paszamant] Do you resent Ms. Ward because of the amount of money she makes?

  A. [Ms. Turner] That is the dumbest question you could every [sic] ask, seriously. Can we get any dumber?

  (V. Turner Dep., Sept. 5, 2024, at 196.)

- Q. [Mr. Paszamant] Can you tell me how it is that this document, individual Defendants Exhibit number 20, damaged your reputation?

  A. [Ms. Turner] I am sorry. Your questions are so ludicrous that I apologize for laughing. They really are ludicrous questions. All I can tell you is I did not review this document, I believe. But I do know that it was denied by Judge Wilson [sic].

  (V. Turner Dep., Sept. 6, 2024, at 21.)

9

- Q. [Mr. Paszamant] Okay. So this particular document that bears the Name Defendants memorandum, well, that was filed on your behalf in the underlying action, was it not?

  A. [Ms. Turner] Are you serious? Seriously? Seriously? You are a lawyer. So are you saying that the clients you represent and that you file documents on behalf of in representing them are somehow suppose [sic] to know exactly what is going on? Is that your answer? I think you need to start changing course here.

  (V. Turner Dep., Sept. 6, 2024, at 30.)

Plaintiffs' counsel argues that "Plaintiffs . . . were not hostile or uncivil in the course of their testimony . . . and did not use profanity or insult defense counsel." (Pls.' Resp. at 3.)[9] Ms. Turner's testimony quoted above, as well as the more expansive recitation of her testimony contained in Defendants' submissions, including the deposition video clips, establish that Ms. Turner behaved in a hostile, unprofessional and uncivil manner at her depositions and intentionally insulted Defendants' counsel and impugned their integrity. Ms. Turner's unprofessional and uncivil behavior was not an isolated occurrence but permeated her interactions with Defendants' counsel throughout all of the depositions.

(b) **Ms. Turner's Evasive and Uncooperative Behavior.** The rules "do not permit evasive or uncooperative answers merely because a deponent is dissatisfied with a question. And they certainly do not permit intentionally prolonging a deposition to further burden the litigation." GMAC Bank, 248 F.R.D. at 191.

---

[9] Plaintiffs point to the deposition testimony of Arthur Wolk in which he called Defendants' underlying litigation against Ms. Turner "bullshit," noting that Plaintiffs did not use profane language in their depositions. (Pls.' Resp. at 3.) Plaintiffs contend that Defendants' failure to file a sanctions motion against Mr. Wolk evidences their intention to "target[] Ms. Turner in any way they can find – and merely seeking to get to Mr. Wolk through Ms. Turner." Id. In the quote cited by Plaintiffs, the deponent, Mr. Wolk, criticized the Underlying Litigation, he did not, as Ms. Turner did, attack Defendants' counsel and impugn their integrity. Moreover, Mr. Wolk's behavior did not require Defendants to seek two additional depositions as did Ms. Turner's behavior.

The record reveals that Ms. Turner often provided evasive and/or lengthy narrative answers to Defendants' questions unnecessarily delaying the depositions and prolonging their duration necessitating a second and third deposition of Ms. Turner. See Motion at 32-36. One example of such lengthy narrative response by Ms. Turner is the following:

- Q. [Mr. Tarantino] I'm asking what happened in the Idaho Supreme Court.
  A. [Ms. Turner] No recollection, Mr. Tarantino, none.
  Q. And you have no recollection of what happened in the – again, I don't want to waste time. That is really not my intention.
  A. Really?
  Q. Yes, really.
  A. Doesn't seem to appear to be that way.
  Q. Well, that could be your view, Ms. Turner. I can tell you I want to get through your deposition as efficiently as I possibly can.
  A. You want to find garbage that has no relevance. That's what you want to do, and that's what you're wasting time on. Once I lost my opportunity with Arthur Wolk, it was downhill. Was I an immediate vegetable, no. It was a progression of day, to day, to day, to day, that my life and my mental health was suffering. And if you can't understand that, then why don't you get sued when you've done nothing wrong by a billion dollar company against a sole practitioner that didn't do anything but get paid $250 an hour for over ten years for this company, providing them my services. But because you've got Greg Canfield, who's got a freaking vendetta, that it was – the day that complaint I received via email from Jim Smith or Rebecca Ward, I knew immediately who was behind this, and that was Greg Canfield, so don't take me there.
  (V. Turner Dep., Sept. 5, 2024, at 26-28.)

Ms. Turner also delayed and impeded her depositions by, on occasion, refusing to read deposition documents about which counsel sought to question her. See Motion at 39-40. An example of this behavior is the following:

- Q. [Mr. Tarantino] . . . "Part of the reason Attorney Turner withdrew as counsel is because she no longer wanted to be involved in litigation whether the other side engaged in unethical tactics and relied on perjury and lies to the court to gain an advantage." That's what you said, right?
  A. [Ms. Turner] Whatever it says, it says.
  Q. Well, did I read it correctly?
  A. I don't know. Whatever the pleading says, I stand by the pleading. That was filed, response by Attorney Turner to order to show cause. That's what it says, that's what it says.

Q. It goes on to say ["]Attorney Turner withdrew. She left this case behind her and refrained from filing a formal complaint with the Idaho Bar against plaintiff Michael Allen, a licensed Idaho attorney, and his attorneys for their unethical conducts." Have I read it correctly?
A. If that's what it says, that's what it says.
Q. Are you choosing not to read it?
A. I don't need to. . . .
(V. Turner Dep., Aug. 15, 2024, at 136-38.)

See also V. Turner Dep., Sept. 6, 2024, at 20-23 (During Ms. Turner's Third Deposition, which was limited to two hours, Mr. Tarantino interrupted Ms. Turner's response stating as follows: "I'm sorry. I need to interrupt. She's just giving speech. I asked her a simple question. This is going to go on and on. And I'm going to run out of time.") (footnote omitted).

Lastly, regarding the length of the three depositions, counsel for Avco/Textron noted that while the "time on the record during Ms. Turner's depositions over the span of four separate days was 15 hours and 9 minutes[,] [n]early five hours of those four days were consumed by breaks, many of which were at the request of Ms. Turner or her counsel." (Avco/Textron Reply at 6.) These breaks included

> breaks to accommodate Plaintiffs' counsel's dog who was "about to go after he mailman." Ex. A, V. Turner Dep. (Aug. 15, 2024) at 87:12-14. It also includes occasions when Ms. Turner walked away from her computer screen. Id. at 149:9-12 ("MR. ELY: I don't know where she went. MR. TARANTINO: Let's go off the record. I don't want the time to run. She's not here. Let's go off the record until she comes back.").

Id. at 6 n. 3. Plaintiffs' counsel urges that Ms. Turner was deposed "for over 20 hours" over the four days of depositions. (Pls.' Resp. at 3 (emphasis deleted).) Ms. Turner bears responsibility for the length of her depositions due to her behavior.[10]

---

[10]    With respect to Ms. Turner's Third Deposition, Plaintiffs' counsel noted that "Defendants did not even use the full two hours they were allotted by Judge Savage." (Pls.' Resp. at 4.) The Special Master finds this point to be irrelevant. As explained by counsel for Avco/Textron, "Avco/Textron's examination was designed to be as efficient as possible and lasted 1 hour and 36

**(c) Ms. Turner Posed Objections to Questions.** The rules also "do not permit a deponent to interpose objections himself." GMAC Bank, 248 F.R.D. at 188-89, 191. The record reveals Ms. Turner objected to questions, even where her counsel did not pose an objection. See Motion at 38-39. The following are examples of this behavior:

- Q. [Mr. Tarantino] With respect to Turner 11, meaning the motion for the show cause order, when you received this, came as a complete surprise to you, correct?
  [Mr. Ely] Objection to form. You can answer.
  A. [Ms. Turner] Well, it did not come as a surprise. That's all I'm going to say about it, because again, you're now starting to enter an area, which is covered by the attorney-client privilege, and I don't own the privilege.
  (V. Turner Dep., Aug. 15, 2024, at 124.)

- Q. [Mr. Paszamant] Did you receive any communications from anybody besides Mr. Ely wherein you were told that he or she had seen any publicly [sic] articles emanating from the Avco versus Turner lawsuit?
  A. [Ms. Turner] Asked and answered. This is like the third time you're asking me the same question.
  Q. Ma'am, respectfully, you answered your own question. Not mine.
  (V. Turner Dep., Sept. 5, 2024, at 263-64.)

**(d) Ms. Turner Refused to Answer Questions Regarding Her Claim for Damages for Reputational Harm.** By Order dated July 3, 2024 (Doc. No. 84), the Special Master ordered Plaintiffs to supplement their response to a discovery request to produce all documents and communications relating to Plaintiffs' claim of reputational harm. In response, Plaintiffs specifically identified by ECF number filings in the Underlying Litigation that Plaintiffs claim support Ms. Turner's reputational harm (the "ECF Documents"). At Ms. Turner's Second Deposition, counsel for the Individual Defendants sought to question Ms. Turner regarding the ECF Documents to understand the factual basis of Ms. Turner's claim that those court filings harmed her reputation. Based upon her own assertion of the attorney-client

---

minutes and covered each of the topics on which they were permitted to further examine Ms. Turner." (Avco/Textron Reply at 7 n.4.)

13

privilege, Ms. Turner refused to answer any questions about the ECF Documents. <u>See</u> Motion 43-48.

- Q. [Mr. Paszamant] Well, you told me that the ECF numbers identified in response to document request number 7 in individual Defendants Exhibit number 17 were accurate at least up through this July 10th, 2024 date, correct?
  A. [Ms. Turner] That was correct. But anything having to do with those numbers or any discussions with my attorney are under attorney/client privilege, which is a privilege that I will not waive.
  Q. I am not asking you to waive your privilege.
  A. Oh, I think you are.
  Q. I am asking you as the individual who has identified these various ECF documents as somehow manifesting damage to your reputation, how it is, ma'am that what has been identified as Exhibit 20 has damaged your reputation?
  A. I answered your question. I am not answering it again.
  Q. Ma'am, I don't think you did. I would like you to tell me how it is that in your eyes as you sit here today what has been identified as individual Defendants Exhibit number 20 has damaged your reputation? And if you do not know, you do not know.
  A. It is not about not knowing. It is about attorney/client privilege, which I am not waiving, and results in discussions with my attorney. That is my answer.
  Q. I am not asking about your discussions with Mr. Ely. I am asking you how this particular filing in the underlying action damaged your reputation as best you know.
  A. You can ask that a hundred times and you are getting the same answer.
  Q. Which is you are not going to tell me because you believe hat answer is privileged?
  [Mr. Ely] Objection to form.
  A. Yes.
  Q. Ma'am, there is a whole host of documents identified by ECF number in response to individual Defendants document request number 7. If I were to ask you how each of those documents damaged your reputation, would you tell me that you won't answer that question because it is privileged?
  [Mr. Ely] Objection to form.
  A. Yes. That is my answer.
  (V. Turner Dep., Sept. 6, 2024, at 22-23.)

In addition to the above excerpt from Ms. Turner's Second Deposition, Ms. Turner stated: "Let's cut to the chase. All of them. Every number that is listed there is attorney/client privilege. I am not waiving that privilege." <u>Id.</u> at 27. Ms. Turner refused to explain how any of the ECF Documents supported her claim for reputational harm and stated: "I guess you will just have to wait and see how this comes together at the end of the day." <u>Id.</u> at 28.

Ms. Turner identified the ECF Documents as the basis of her claim for reputational damages. Defendants have the right to question Ms. Turner about the ECF Documents in order to respond to and defend against her claim for reputational harm. Defendants' counsel clearly stated that they were not seeking attorney-client communications but, rather, the factual basis of Ms. Turner's claim for reputational harm. Ms. Turner's blanket assertion of the attorney-client privilege in response to every question regarding the ECF Documents is inappropriate and her refusal to answer these basic questions severely prejudiced Defendants by depriving Defendants of their ability to respond to and defend against this claim.

The Special Master also notes that Plaintiffs' counsel did not assert an attorney-client privilege objection to the questions regarding the ECF Documents. At the Hearing, the undersigned and Plaintiffs' counsel engaged in the following colloquy regarding the ECF Documents and Ms. Turner's blanket assertion of the attorney-client privilege.

> Q. [Special Master] What about this assertion of attorney-client privilege when Mr. Paszamant asked the question about what in the ECF documents damaged her reputation and she repeatedly asserted attorney-client privilege when it was clear he was not asking for confidential communications? . . . [D]o you agree with that position?
> A. [Mr. Ely] The problem was that he didn't ask the questions properly.
> Q. Well he asked it so many different times to try to avoid . . . listening to confidential privileges. . . .
> A. The claim of loss of reputation is per se defamation because they accused her of unethical conduct as a lawyer throughout the pleadings. We don't have to show that anyone actually saw it. It's per se. She never claimed that anyone specific had seen those pleadings. If we had that information we would have given it to them.
> Q. Well, she didn't answer that way. She refused to answer at all . . . All I'm asking you is do you agree with her position?
> A. I think - - when it implicated discussions with me it certainly did.
> Q. But you're saying these questions implicated discussions with you?
> A. Yes.

(Hearing Tr. at 107-08.)

Again, Ms. Turner, not her counsel, objected to the questions regarding the ECF Documents on the basis of the attorney-client privilege. At the Hearing, Plaintiffs' counsel raised

15

an argument regarding the ECF Documents and per se defamation. In her Second Amended Complaint (Doc. No. 44), Plaintiffs do not raise a claim of defamation. In Count One (Wrongful Use of Civil Proceedings) and Count Two (Civil Conspiracy) of the Second Amended Complaint, Ms. Turner alleges she suffered damages from Defendants' conduct including "harm to her reputation." (Second Am. Compl. ¶¶ 86, 92.) Plaintiffs' counsel failed to state a sufficient basis justifying Ms. Turner's blanket objection based on the attorney-client privilege or her failure to answer any questions regarding the ECF Documents.

**(e) Sanctions for Plaintiff Veronica Turner's Deposition Misconduct.** The imposition of sanctions is warranted in this case due to Ms. Turner's deposition misconduct. As the above discussion establishes, as supplemented by additional examples of misconduct by Ms. Turner identified in Defendants' submissions and as confirmed by the video clips submitted by Defendants, Defendants have identified "specific language" and "conduct" proving that Ms. Turner "impede[d], delay[ed], or frustrate[d] the fair examination" at all three of her depositions. Ms. Turner's misconduct required Defendants to, inter alia, take two additional depositions of Ms. Turner and file the instant Motion. Also, Ms. Turner's conduct severely prejudiced Defendants by, inter alia, depriving them of the ability to respond to and defend against Ms. Turner's claim for reputational harm.

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976) (considering the imposition of sanctions under Rule 37 for failure to comply with discovery orders)). The Court in Nat'l Hockey League, reversed a Court of Appeals' reversal of a district court order dismissing a

respondent's complaint for failure to comply with discovery orders. Nat'l Hockey League, 427

U.S. at 640-41. In reversing the Court of Appeals, the Court stated as follows:

> While the Court of Appeals stated that the District Court was required to consider the full record in determining whether to dismiss for failure to comply with discovery orders, . . . , we think that the comprehensive memorandum of the District Court supporting its order of dismissal indicates that the court did just that. That record shows that the District Court was extremely patient in its efforts to allow the respondents ample time to comply with its discovery orders. Not only did respondents fail to file their responses on time, but the responses which they ultimately did file were found by the District Court to be grossly inadequate.

Id. at 641-42. The Court continued that "the most severe in the spectrum of sanctions provided

by statute or rule must be available to the district court in appropriate cases, not merely to

penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who

might be tempted to such conduct in the absence of such a deterrent." Id. at 643.

Here, viewing the record as a whole, Defendants are entitled to an award of

reasonable costs and attorneys' fees under Rule 37(a)(5)(A) incurred by Defendants in (i)

pursuing the Motion at issue herein, including the preparation of all submissions related to the

Motion and preparation for and attendance at the Hearing, and (ii) preparing for and conducting

Ms. Turner's Second and Third Depositions. Ms. Turner has not shown that her conduct was

substantially justified or that such as award is unjust. See Rule 37(a)(5)(A).

Defendant's request that Ms. Turner's claim for reputational harm be stricken as

an additional sanction is warranted and Plaintiffs are precluded from proceeding at trial on any

claim for damages related to reputational harm to Ms. Turner. As noted above, Ms. Turner's

conduct severely prejudiced Defendants by, inter alia, depriving them of the ability to respond to

and defend against Ms. Turner's claim for reputational harm. A district court may sanction a

party for refusing to provide discovery to support a damage claim by ordering the preclusion of

evidence to support that claim. Ware v. Rodale Press, Inc., 322 F.3d 218, 221-25 (3d Cir. 2003)

17

(discussing Rule 37(b)(2)(B)). In exercising this discretion, a court should consider the factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863 (3d Cir. 1984), which are: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) meritoriousness of the claim or defense." Poulis, 747 F.2d at 868. See also Ware, 322 F.3d at 221 (citing the Poulis factors).

Applying these factors to the instant case, it is clear that Plaintiff Veronica Turner bears personal responsibly for refusing to answer questions regarding her claim for reputational harm. Indeed, after repeatedly refusing to provide answers to basic questions regarding this claim, Ms. Turner taunted Defendants' counsel by stating "I guess you will just have to wait and see how this comes together at the end of the day." (V. Turner Dep., Sept. 6, 2024, at 28.) With respect to the second Poulis factor, Defendants are clearly prejudiced by Ms. Turner failing to provide specific information concerning her reputational damages claim. The trial in this matter is scheduled for December 5, 2024; at this late stage it would be impractical to order a fourth deposition of Ms. Turner to answer counsels' questions. With the trial less than two weeks away, Defendants have no ability to prepare a defense to Ms. Turner's claim of reputational harm/damages.

With respect to the third Poulis factor, Ms. Turner has demonstrated a history of dilatoriness. As outlined above, over the course of three depositions she has impeded counsels' ability to obtain information regarding her reputational harm claim. Moreover, Defendants' counsel have expressed reasonable concerns about the thoroughness of Plaintiffs' efforts to locate

documents/communications responsive to discovery requests. With respect to the fourth <u>Poulis</u> factor, willful and bad faith conduct, the record clearly shows that Ms. Turner intentionally refused to provide testimony regarding the ECF Documents, despite counsel repeatedly clarifying they were not seeking information protected by the attorney-client privilege.

With respect to the fifth <u>Poulis</u> factor, the Special Master has considered and analyzed the effectiveness of sanctions other than dismissal of this claim. This case is on the eve of trial; it is not practical or even possible to open discovery to allow yet another deposition of Ms. Turner to investigate this claim. The final <u>Poulis</u> factor requires consideration of the meritoriousness of the claim at issue. Here, the Special Master cannot determine whether the claim for reputational harm is meritorious because of Ms. Turner's complete failure to provide any evidence to support this claim. Consideration of the <u>Poulis</u> factors requires the Special Master to strike Ms. Turner's reputational harm/damages claim and preclude any evidence regarding this claim.

Further, viewing the record as a whole, Ms. Turner was afforded an opportunity to adjust her conduct at her depositions and to comply with discovery orders. Defendants' counsel acknowledged Ms. Turner's health issues at her depositions and invited her to raise concerns at her depositions if she were experiencing difficulty. Moreover, the Special Master declined to grant Defendants' earlier motion for sanctions (Doc. No. 116) but deferred it. Ms. Turner's conduct at all three of her depositions was unprofessional, uncivil and hostile and she chose not to correct her behavior despite having the opportunity to do so.

It is undisputed that "[c]ounsel for both parties, and the parties themselves, are of course expected to be professional and courteous throughout a deposition." <u>Wabote v. Ude</u>, 2022 WL 684844, at *7 (E.D. Pa. Mar. 8, 2022). As an experienced litigator, Ms. Turner clearly is

aware of the demeanor and tone expected of a deponent; she fell far short of that expectation during all three of her depositions. The Motion with respect to Plaintiff Veronica Turner is **GRANTED** and sanctions shall be imposed as set forth in this Order.

(3) **Plaintiff Kevin Turner's Depositions**. Both of Mr. Turner's depositions were remote. Mr. Turner's first deposition was conducted on August 16, 2024 ("Mr. Turner's First Deposition"). The transcript of Mr. Turner's First Deposition is attached to the Motion as Exhibit B. Mr. Turner's second deposition was conducted on September 6, 2024 ("Mr. Turner's Second Deposition"). The transcript of Mr. Turner's Second Deposition is attached to the Motion as Exhibit E.

(i) **Mr. Turner's Behavior Did Not Significantly Impede, Delay or Frustrate the Fair Examination of Mr. Turner During His Depositions.** During his depositions, Mr. Turner lodged personal attacks against Defendants' counsel and spoke in an uncivil, aggressive and hostile manner. (Motion at 1-2, 4-5; Avco/Textron Reply at 2.) For example, in Mr. Turner's Second Deposition, addressing Ms. Turner's assertion that she has been confined to her home as a result of the Underlying Litigation, Mr. Turner stated that Avco/Textron's counsel "dicked with [his] life and [his] wife's life," and asserted that specific counsel posed a "huge security concern" for him by including photographs of their home in the deposition exhibit binder. (K. Turner Dep., Sept. 6, 2024, at 14.) Mr. Turner also alleged that Avco/Textron's counsel and her law firm, Blank Rome, and persons at Avco/Textron may use information regarding Plaintiffs' address and home to cause harm to Plaintiffs. See, e.g., id. at 16, 18, 20, 22-23, 25-26. See also Pls.' Resp. at 4.

Unlike Plaintiff Veronica Turner, Mr. Turner is not an attorney. While the Special Master finds Mr. Turner's demeanor and tone to be hostile and wholly inappropriate, he did not

significantly extend the duration of his depositions and, as a non-attorney, does not possess Ms. Turner's training, knowledge and experience regarding the proper behavior to exhibit during a deposition and the appropriate demeanor expected of a deponent. The Motion with respect to Plaintiff Kevin Turner is **DENIED**.

## III.   CONCLUSION

For reasons stated herein, it is hereby

### ORDERED

1.     Defendants Avco/Textron's Deferred Motion for Sanctions for Plaintiffs' Failure to Comply with the Special Master's Order (Doc. No. 116) is **DENIED.**

2.     Defendants Avco/Textron's Motion for Sanctions for Plaintiffs' Deposition Misconduct (Doc. No. 188) with respect to Plaintiff Veronica Turner is **GRANTED** and the following sanctions are imposed:

(a) Plaintiff Veronica Turner's claim for reputational harm/damages is **STRICKEN**. Plaintiffs are precluded from proceeding at trial on any claim for damages related to the alleged reputational harm to Plaintiff Veronica Turner; and

(b) an award is entered in favor of Defendants and against Plaintiff Veronica Turner for attorneys' fees and costs incurred by Defendants in (i) pursuing the Motion at issue herein, including the preparation of all submissions related to the Motion and preparation for and attendance at the Hearing, and (ii) preparing for and conducting Ms. Turner's Second and Third Depositions.

3.     Defendants' counsel shall submit an application and affidavit to the undersigned, for review and approval, detailing the attorneys' fees and all costs which they claim

they are entitled to recover under paragraph 2(b) of this Order within thirty (30) days from the date hereof.

4.    Defendants Avco/Textron's Motion for Sanctions for Plaintiffs' Deposition Misconduct (Doc. No. 188) with respect to Plaintiff Kevin Turner is **DENIED**.

_____
Hon. Thomas J. Rueter (Ret.)
Special Master