**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VERONICA TURNER and** | : | **CIVIL ACTION** |
| **KEVIN TURNER** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **AVCO CORPORATION, TEXTRON, INC.,** | : | |
| **JAMES T. SMITH, Esquire, REBECCA** | : | |
| **WARD, Esquire, and HEIDI CRIKELAIR,** | : | |
| **Esquire** | : | **NO. 24-715** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                    **September 30, 2025**

After an action for breach of fiduciary duty brought by her former clients ended in her favor, attorney Veronica Turner brought this action for wrongful use of civil proceedings under Pennsylvania's "Dragonetti Act."  She sued her former clients, defendants Avco Corporation and Textron, Inc., and their attorneys, James T. Smith, Rebecca Ward, and Heidi Crikelair.  The jury found that the defendants had probable cause to bring the breach of fiduciary duty action and were thus not liable for any of the harm alleged.

The Turners[1] move for judgment as a matter of law and a new trial.  They argue we improperly denied the initial motion for judgment as a matter of law they advanced at trial, they were prejudiced by erroneous evidentiary rulings, and the verdict was not supported by the evidence.  Because we conclude that there were no errors and there was ample evidence to support the verdict, we deny the motion.

**Factual Background**

For over a decade, Ms. Turner defended Avco Corporation ("Avco") and its unincorporated operating division, Lycoming Engines ("Lycoming"), in products liability litigation arising from aviation crashes.[2]  In 2018, she terminated her representation.[3]

In June 2020, Ms. Turner sought admission *pro hac vice* in *Torres v. Honeywell, Inc. et al.*, a personal injury and wrongful death action arising from a 2015 airplane crash that was pending in the Superior Court of Arizona, Maricopa County.  No. CV2017-007542 (Ariz. Super. Ct. July 31, 2018).[4]  The *Torres* plaintiffs alleged that the crash was caused by a defective turbocharging system that Avco, Lycoming, and other defendants had designed or manufactured.[5]

Ms. Turner's *pro hac vice* application was submitted by The Wolk Law Firm,[6] which had represented plaintiffs in products liability actions against Lycoming, including cases litigated while Ms. Turner was Lycoming's counsel.[7]  When Ms. Turner moved for admission in *Torres*, Avco and Lycoming had already been dismissed for lack of personal jurisdiction on the basis that they had "no contact at all with Arizona related to the engine or turbocharger."[8]  That decision was on appeal.[9]  Once admitted to represent the *Torres* plaintiffs, Ms. Turner drafted and argued *Daubert* motions seeking to preclude the opinions of experts, including an expert for defendant Honeywell who had previously served as an expert for Avco and with whom Ms. Turner had worked when she represented Lycoming.[10]

In June 2020, Avco's attorneys in *Torres* informed Gregory Canfield, Associate General Counsel of Avco's parent company Textron, Inc.,[11] that Ms. Turner had moved to appear on behalf of the *Torres* plaintiffs.[12]  Avco retained Blank Rome LLP to advise

2

them on a potential response.[13]  The attorneys assigned to the case included defendants James T. Smith, Rebecca Ward, and Heidi Crikelair (the "Attorney Defendants").[14]  On June 30, 2020, on behalf of Avco, they filed an action for breach of fiduciary duty (the "Underlying Action") in the U.S. District Court for the Eastern District of Pennsylvania.[15]  When it filed its complaint, Avco also moved for a preliminary injunction to bar Ms. Turner from representing or providing legal assistance to its adversaries in any matter "substantially related or similar to Turner's past representation" of Avco and its affiliated companies.[16]  The injunction was denied.[17]  In August 2021, Judge Wolson granted summary judgment in favor of Ms. Turner.  *See Avco Corp. v. Turner*, No. 2:20-cv-04073, 2021 WL 3722274, at *5 (E.D. Pa. Aug. 23, 2021).[18]  Avco appealed.  The Third Circuit Court of Appeals vacated and remanded the case.  *See Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015, at *4 (3d. Cir. July 22, 2022).[19]  On remand, Judge Wolson granted summary judgment in favor of Ms. Turner.  *See Avco Corp. v. Turner*, No. 2:20-cv-04073, 2022 WL 17251250, at *3 (E.D. Pa. Nov. 28, 2022).  The Third Circuit affirmed the judgment.  *See Avco Corp. v. Turner*, No. 2:20-cv-04073, 2024 WL 185678, at *1 (3d Cir. Jan. 17, 2024).[20]

Ms. Turner then brought this action against Avco, Textron, Inc.,[21] and the Attorney Defendants for wrongful use of civil proceedings under Pennsylvania's "Dragonetti Act."[22] *See* 42 Pa. Cons. Stat. Ann. §§ 8351–54. Ms.  Turner's husband, Kevin Turner, asserted a loss of consortium claim.[23]  The parties engaged in lengthy and contentious discovery. After we denied cross motions for summary judgment,[24] the case proceeded to trial.

To recover under the Dragonetti Act, the Turners had to prove by a preponderance of the evidence that (1) Avco and the Attorney Defendants procured, initiated, or

continued a civil proceeding against Ms. Turner; (2) in doing so, they acted in a grossly negligent manner or without probable cause; (3) they procured, initiated, or continued the action for an "improper purpose"; and (4) the action ended in Ms. Turner's favor.

The parties did not dispute the first and fourth elements.[25] Hence, Ms. Turner had to prove that the defendants had acted with gross negligence or without probable cause in bringing and maintaining the Underlying Action, and that they pursued the Underlying Action for an improper purpose.

The jury heard testimony that prior to advising Avco it had grounds to pursue a claim for breach of fiduciary duty against Ms. Turner, the Attorney Defendants had multiple discussions with Avco employees to gather information on Ms. Turner's history with Avco, the aviation crash cases on which she had worked, and information relating to lawsuits in which The Wolk Law Firm had represented plaintiffs against Avco.[26] The jury also heard that the Attorney Defendants had relied on both information provided by Avco and their own search of public documents to learn about Ms. Turner's prior representation of Lycoming and Avco's reasons for considering a lawsuit against her.[27]

The evidence showed that the Attorney Defendants had sought the advice of legal ethics expert Professor Nancy Moore to determine whether they could, given the facts uncovered in their investigation, plead a viable claim against Ms. Turner.[28] Professor Moore reviewed drafts of the complaint and advised the Attorney Defendants that the claim, as alleged, was a factually and legally viable claim.[29] Professor Moore never wavered in her belief that the defendants had filed and maintained a valid claim.[30] The jury also heard that the Attorney Defendants would not have counseled Avco to file the

Underlying Action had Professor Moore not advised them that the claim was sufficiently pleaded.[31]

The jury also heard that Ms. Turner filed a declaration in opposition to Avco's motion for a preliminary injunction in which she stated that she did not understand Avco engines or their components, and had never represented Avco.[32] The Attorney Defendants worked with Michael Kraft, former head of engineering and Senior Vice President at Avco,[33] who submitted his own declaration refuting the statements made by Ms. Turner.[34]  The evidence showed that the Attorney Defendants viewed Mr. Kraft's declaration as further support that Avco's claim against Ms. Turner was factually grounded.[35]  The jury also heard the expert testimony of Lawrence Stengel, an experienced litigation attorney, who opined that the Attorney Defendants had "met and exceeded [the standard of care in their representation of Avco] in starting and continuing the [U]nderlying [A]ction."[36]  Mr. Stengel testified that his conclusion was supported by the Attorney Defendants' use of a "methodical diligent process . . . in deciding whether to proceed" with Avco's claim.[37]  He observed that the Attorney Defendants had "extensive communication" with Avco and "extensive interaction with Professor Moore" throughout the Underlying Action.[38]

The evidence showed that Professor Moore reviewed deposition transcripts and declarations submitted throughout the course of the Underlying Action and provided her own supplemental declaration in support of Avco's motion for summary judgment, explaining that she maintained her opinion that Ms. Turner had "either fail[ed] to understand or appreciate" her ethical obligations to Avco.[39]  Mr. Kraft and Michael Everhart, another Avco technical expert, each submitted declarations in support of Avco's

motion for summary judgment, which the record showed was "important" to the Attorney Defendants, because they believed the declarations strengthened their case and further supported their conclusions that it was valid.[40]

Avco asserted an "advice of counsel" and "advice of expert" defense.[41]   It maintained it had probable cause to bring and maintain the Underlying Action because it "reasonably believe[d] in the existence of the facts upon which [its] claim [was] based" and "believe[d] to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within [Avco's] knowledge and information."  *See* 42 Pa. Cons. Stat. § 8352(2).  Specifically, it showed the jury that Avco employees Gregory Canfield, Lawrence LaSala, Shannon Massey, and Matthew Cairns, all of whom made decisions related to the Underlying Action, relied on advice from the Attorney Defendants in making those decisions.[42]  The Attorney Defendants testified that the advice they provided Avco was, in turn, both thoroughly researched and informed by Professor Moore's advice.[43]  The jury also heard evidence from Professor Moore herself, who testified about the information she reviewed and the facts she considered in forming her opinion that Avco had a viable breach of fiduciary duty claim against Ms. Turner.[44]

Mr. Canfield testified that the Attorney Defendants wanted "all of the information" on the case that Avco could provide, and that Avco provided them "ostensibly every piece of information that [they] could find."[45]  The Attorney Defendants testified that they had no reason to believe that Avco withheld any information from them or from Professor Moore.[46]

Mr. Canfield stated that if the Attorney Defendants had told him that they did not believe Avco had a viable case against Ms. Turner for breach of fiduciary duty, he would

not have sought authorization from Avco to proceed with the litigation.[47]  Multiple Avco decisionmakers also testified that they authorized the litigation based on due diligence and assessment of the facts by the Attorney Defendants, the Attorney Defendants' advice regarding the validity of the lawsuit, and Professor Moore's expert advice.[48]  The jury also heard that throughout the course of the Underlying Litigation, Mr. Cairns assumed responsibility for the day-to-day case management and continued to rely on the advice of the Attorney Defendants and Professor Moore in doing so.[49]

The Attorney Defendants also testified that their advice was based on an exhaustive factual investigation, and that they had no reason to believe that Avco was not relying on their advice in initiating and maintaining the action.[50]  The Attorney Defendants testified that Avco never refused to provide access to information they requested.[51]  Mr. Smith also testified that the Attorney Defendants' decision to consult and retain a qualified expert to inform their recommendation to Avco was not a requirement, but something they did out of an abundance of caution and a desire to be "damn sure" that the claim would be viable prior to recommending to Avco that it be filed.[52]

The jury also heard evidence that when the Attorney Defendants and Professor Moore advised Avco that they had a viable claim against Ms. Turner, they were aware of many of the facts that the Turners claim undercut a finding of probable cause.[53]  The Attorney Defendants knew that the turbocharger at issue in *Torres* was not manufactured, installed, or designed by Avco,[54] and that Barbara Stetts, an Avco corporate designee in the Underlying Action, had testified that she could not identify any case Ms. Turner worked on for Avco that was related to *Torres* or involved the same engine components.[55]  They also knew, as did Professor Moore, that Avco had been dismissed from *Torres* before

Ms. Turner submitted her application to appear *pro hac vice*.[56]  The Attorney Defendants and Professor Moore testified as to why their awareness of these facts did not change their opinions that Avco had a viable claim against Ms. Turner.[57]

On December 12, 2024, after the close of the evidence, the Turners moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) solely on the issue of lack of probable cause.[58] Their counsel argued that they had proved that element as a matter of law, allowing us to "take [the] issue away from the jury."[59]  We denied the motion.[60]

The jury subsequently returned a verdict in favor of Avco and the Attorney Defendants, finding that none had acted in a grossly negligent manner or without probable cause in procuring, initiating, or continuing the Underlying Action against Ms. Turner.[61] Because they found for the defendants on those points and the Turners' claim failed as a result, the jury never reached the issue of whether the defendants had acted with improper purpose.[62]

The Turners now renew their motion for judgment as a matter of law and move for a new trial.[63]

## MOTION FOR JUDGMENT AS A MATTER OF LAW

We can grant a motion for judgment as a matter of law ("JMOL") pursuant to Rule 50(b) only "if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief."  *Sondesky v. Cherry Scaffolding Inc.*, Civ. A. Nos. 19-2899 &19-2900, 2021 WL 4147099, at *2 (3d Cir. Sept. 13, 2021) (citing *In re Lemington Home for the Aged Official Comm. of Unsecured Creditors*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Trabal v. Wells Fargo Armored Serv.*

*Corp.*, 269 F.3d 243, 249 (3d Cir. 2001))).  In considering the motion, we may not weigh the evidence, judge the credibility of the witnesses, or substitute our version of the facts for the jury's.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F. 3d 1153, 1166 (3d Cir. 1993); *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

We consider the evidence in the strongest light favorable to the verdict winner and accord it every fair and reasonable inference.  *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1976).  "[C]onflicting evidence which could reasonably lead to inconsistent conclusions will not justify a judgment notwithstanding the verdict or a directed verdict."  *Id.*

## Analysis

The Turners renew their motion for JMOL pursuant to Rule 50(b).  Specifically, they ask that we grant JMOL on the lack of probable cause element as to the Attorney Defendants and order a new trial on the issues of gross negligence, improper purpose, and damages.[64]  They contend that "[t]here was no conceivable factual dispute or issue[] of credibility on the lack of probable cause," and, thus, the issue "never should have been submitted to the jury."[65]  They also request that we enter judgment "on the issue of liability as to [Avco]."[66]

As a threshold matter, we deny the Turners' request that we find Avco liable as a matter of law.  The Turners do not argue that they established the improper purpose element.  Therefore, even if we were to find that they had proven the lack of probable cause element of their Dragonetti claim, we cannot grant judgment because the improper purpose element remains unproven.

Avco and the Attorney Defendants assert that the Turners waived their current

arguments because their "arguments in support of their Rule 50[(b)] motion . . . were not raised in their initial Rule 50[(a)] motion[.]"[67] Avco argues the motion also fails because the Turners' Rule 50(b) motion "is directed only to a single element" of their Dragonetti Act claim, and JMOL can be granted only as to an entire claim or defense.[68]  The defendants also contend that, even if the Turners' JMOL motion does not fail procedurally, it fails on the merits because it cannot meet the high standard required under Rule 50(b).

**Waiver**

A post-trial Rule 50(b) motion can only be made on grounds the movant specifically raised in a motion for a directed verdict at the end of the nonmovant's case. *See Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 617 (3d Cir. 1989); *Williams v. Runyon*, 130 F.3d 568, 571–72 (3d Cir. 1997).  In *Williams v. Runyon*, the Third Circuit Court of Appeals explained that a party must state the grounds for their Rule 50(a)(2) motion with sufficient specificity to put the opposing party on notice, and that failure to do so waives the right to raise the issue later in a Rule 50(b) motion.  130 F.3d 568, 571–72 (3d Cir. 1997).

At trial, the Turners' entire argument supporting their motion for judgment as a matter of law consisted of the following:

> "Your Honor, I would briefly make a motion on behalf of the Plaintiffs on the element of lack of probable cause. I believe there's enough evidence in the record for Your Honor to decide that and take that issue away from the jury as to all the Defendants, particularly given the fact that they did not provide half of the analysis that they needed to provide to either of their experts. Both of their experts testified they didn't have it**.** And they could not have had probable cause to bring this claim without providing that information."[69]

The Turners' counsel did not clarify which "experts" were provided insufficient information.  We infer from his response to the defendants' Rule 50 motions that he was referring to Mr. Kraft and Professor Moore.[70]  In response to the Attorney Defendants'

Rule 50 motion, the Turners' counsel responded:

> "There's ample evidence that [the Attorney Defendants] were aware they
> had no probable cause. Neither Mr. Kraft nor Professor Moore was given
> half of the analysis, which was anything to do with the work Ms. Turner
> actually did in *Torres*. Mr. Kraft admitted even on the stand he still didn't
> know what it was. Professor Moore was shown the list of documents she
> was given. They never gave either of their experts literally one half of the
> information they needed to make the analysis. And neither one of them
> made it."[71]

Although the Turners do not cite the same evidence in support of their argument

now, we note that the 50(a) motion was properly denied.  In cross examining Mr. Kraft

and Professor Moore, the Turners' counsel identified information that Mr. Kraft and

Professor Moore conceded they had not considered prior to advising the Attorney

Defendants.[72]  But, neither Mr. Kraft nor Professor Moore testified that that information

would have changed their conclusions.  Professor Moore was clear that she "fe[lt] that

[she] possessed all the information that [she] needed to provide the guidance and

opinions that [she] gave the [Attorney Defendants]" and that "[d]uring the entire course of

[her] involvement in the [Underlying Action]" she "believe[d] that Avco had advanced a

viable claim for breach of fiduciary duty against [Ms. Turner.]"[73]

The Turners do not mention the testimony of Mr. Kraft or Professor Moore in their

renewed motion.  They now argue that the defendants "had no probable cause under the

Dragonetti Act to initiate or continue the [U]nderlying [A]ction against Ms. Turner, based

on: (1) [the defendants'] own admissions and communications; (2) the binding admission

of Avco's corporate designee (Barbara Stetts) at her June 2, 2021 deposition that there

was no case Ms. Turner ever worked on that was related in any way to her work on the

*Torres* [] case; (3) [defendants'] admission in their complaint [in the Underlying Action]

from day one that Ms. Turner's work did not involve or implicate Avco; (4) the false

allegations in their complaint in the [U]nderlying [A]ction claiming that Ms. Turner worked on cases in which defects in a turbocharger were alleged when she never did; and (5) their admissions that the transcripts of Ms. Turner's work on the *Torres* case did not implicate any information whatsoever that she learned from Avco."[74]  The Turners argue that their Rule 50(b) motion "need not be denied" because their Rule 50(a) motion "was sufficiently specific" and "was limited to [the] issue" of whether the Turners had established lack of probable cause as a matter of law.[75]

In determining whether the movant has raised the grounds asserted in their Rule 50(b) motion in an earlier Rule 50(a) motion, we look at the "communicative content, specificity[,] and notice-giving function" of the movant's assertions, all of which must be "judged in context."  *Holt v. Pennsylvania*, 683 F. App'x 151, 156 (3d Cir. 2017) (quoting *Acosta v. Honda Motor Co.*, 717 F.2d 828, 832 (3d Cir. 1983) (internal quotation marks omitted)). Even where a moving party "could (and should) have stated the basis of their motion for a directed verdict with considerably greater specificity[,]" where the record shows that the court and opposing counsel were able to understand and respond to the motion "as if [it] had been more specific at the time[,]" the motion may be sufficient to satisfy Rule 50.  *Acosta*, 717 F.2d at 832.

In *Acosta v. Honda Motor Co.*, in support of his Rule 50(a) motion, the movant's counsel stated only that he "move[d] for a directed verdict on Count[] I and the remaining counts, . . . under 402(1) [sic] theory which is . . . strict liability . . . and the negligence count which I believe are the only remaining counts in all of the complaints[.]"  *Id.*  The *Acosta* Court recognized that this motion, "standing alone," ordinarily might be insufficient.  *Id.*  But, in response to the motion, the trial court had expressed that the moving party

had, in effect, moved for a directed verdict on the issues of negligence, strict liability, and punitive damages, and opposing counsel responded that it had sufficiently proved its strict liability and negligence claims. *Id.* Thus, the Third Circuit held that the motion, considered in context, was sufficient to satisfy Rule 50 and put the opposing party on notice of the issues to be raised in the movant's Rule 50(b) motion. *Id.*

Although the Rule 50(a) motion here was scant, it made clear to us and opposing counsel that the Turners were arguing that they had established lack of probable cause as a matter of law. It is the same argument, albeit with additional support, they made at trial. Under the circumstances, we conclude that the Turners did not waive their lack of probable cause argument.

### JMOL as to a Single Element

A post-trial motion for judgment as a matter of law is not a means of disposing of individual elements of a claim. The law is clear. Rule 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; *and* (B) grant a motion for judgment as a matter of law against the party *on a claim or defense* that, under the controlling law, can be maintained or defeated only with a favorable ruling on that issue." Fed. R. Civ. P. 50(a)(1) (emphasis added). On a renewed motion for judgment as a matter of law, we may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; *or* (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b) (emphasis added).

13

Rule 56 explicitly allows a court to enter a judgment on a "claim or defense" or, critically, "*part of* [a] claim or defense" before its submission to a jury.  *See* Fed. R. Civ. P. 56(a) (emphasis added).  By contrast, the plain text of Rule 50 allows judgment only on an entire claim, when all elements are satisfied.

A ruling in favor of the Turners on the issue of lack of probable cause would not dispose of their Dragonetti Act claim because the improper purpose element has not been resolved.

### Lack of Probable Cause as a Matter of Law

Even if we could grant JMOL on the lack of probable cause issue standing alone, the Turners' substantive arguments fail.  It is not enough to show that a finding that the defendants lacked probable cause to bring and maintain the Underlying Action would have been supported by the evidence.  The Turners must show that the jury's finding that the defendants had probable cause is *not* supported by the evidence.  *See Fireman's Fund*, 540 F.2d at 1177.

To grant judgment as a matter of law in favor of a party that bears the burden of proof on an issue, we "must be able to say not only that there is sufficient evidence to support the [movant's proposed] finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding."  *See id.* (citing *Mihalchak v. American Dredging Co.*, 266 F.2d 875, 877 (3d Cir. 1959), cert. denied, 361 U.S. 901 (1959); *Arkwright Mut. Ins. Co. v. Philadelphia Elec. Co.*, 427 F.2d 1273, 1275 (3d Cir. 1970)).

The Turners cite evidence they contend is "undisputed evidence of lack of probable cause."[76] The defendants counter that the jury's finding they acted with probable cause

in procuring, initiating, and continuing the Underlying Action was fully supported by ample evidence from the trial record, citing voluminous evidence presented at trial.[77]   That evidence shows that before filing the Underlying Action, the Attorney Defendants undertook an extensive investigation of Ms. Turner's prior representation of Avco, the cases on which she worked, and her involvement in the *Torres* litigation.[78]  The jury heard testimony that the Attorney Defendants met and communicated extensively with multiple Avco decisionmakers and employees knowledgeable of the work Ms. Turner had done for Avco and the knowledge she would have gained from that representation.[79]  Despite a lack of obligation to do so, the Attorney Defendants engaged Professor Moore, an expert in attorney ethics and professional responsibility, for advice about the validity of a breach of fiduciary duty claim and whether the facts uncovered in their investigation were enough to support a *prima facie* case.[80]   The jury heard expert testimony that the investigation the Attorney Defendants undertook exceeded the standard of care attorneys have a duty to meet in representing their clients.[81]

The jury also heard that the Attorney Defendants relied on the results of their investigation, consultations with Professor Moore, and discussions with Avco technical experts to conclude that Avco had a viable claim for breach of fiduciary duty.[82]  It heard that, absent Professor Moore's opinion that Avco had sufficient evidence to show that Ms. Turner had violated her ethical duty, the Attorney Defendants would not have counseled Avco that it had a viable claim.[83]   The jury heard that Avco, in turn, would not have filed the claim absent the thoroughly researched and expert-approved advice of their attorneys.[84]

The defendants' references to the record are accurate and support the verdict. The Turners have failed to show otherwise. Viewing the evidence in the light most favorable to the defendants, as the verdict winners, we find that there was more than sufficient evidence to support the jury's verdict that the defendants had probable cause to initiate and continue the Underlying Action. The Turners have made no argument to the contrary. Hence, the motion for judgment as a matter of law fails.

## MOTION FOR A NEW TRIAL

When a court grants a new trial based on the weight of the evidence, it has "to some extent at least, substituted [its] judgment of the facts and the credibility of the witnesses for that of the jury." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) (alteration in original) (quoting *Lind v. Schenley Indus. Inc.*, 278 F.2d 79, 90 (3d Cir. 1960)). When it does, the court usurps the jury's exclusive factfinding role. *Id.* We cannot substitute our judgment for that of the jury simply because we might have reached a different conclusion. *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016). Thus, a court must grant a new trial on the ground that the verdict was against the weight of the evidence only where allowing the verdict to stand would result in a miscarriage of justice. *Id.*

Critically, a new trial is not warranted based on an erroneous evidentiary ruling unless a substantial right of a party was affected. *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 205 (3d Cir. 2000) (quoting *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994)); *Montgomery Cnty. v. Microvote Corp.*, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001), *aff'd*, 320 F.3d 440 (3d Cir. 2003). A non-constitutional error is harmless if it "is

highly probable that the error did not affect the outcome of the case." *Becker*, 207 F.3d at 205 (quoting *Glass*, 34 F.3d at 191).

## Analysis

Ms. Turner had to prove: (1) the defendants procured, initiated, or continued to pursue a civil proceeding against her; (2) in doing so, they acted in a grossly negligent manner or without probable cause; (3) they did so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claims in which the proceedings were based; and (4) the proceedings were terminated in her favor.[85]

The jury was instructed that the defendants caused the Underlying Action to be initiated against Ms. Turner and that the proceedings terminated in her favor.[86]  We explained that Ms. Turner needed only to prove the remaining two elements—that the defendants acted in a grossly negligent manner or without probable cause in bringing and continuing the action, and that the primary purpose for pursuing the action was for an improper purpose.

The jury returned a verdict finding that none of the defendants had acted in a grossly negligent manner or without probable cause to procure, initiate, or continue civil proceedings against Ms. Turner.[87]  Consequently, the jury did not reach the question of whether any defendants had pursued the underlying litigation for an improper purpose.[88]

## Exclusion of Evidence

The Turners contend we improperly excluded evidence that is "highly probative" of the probable cause and improper purpose elements of their Dragonetti claim.[89]  Among those exhibits are many that were admitted and used at trial, others that either were not

ruled inadmissible or were ruled admissible but not proffered or moved into evidence, and some that were ruled inadmissible but had no bearing on any issues affecting the verdict.

The Turners argue that seven categories of evidence were erroneously excluded. They are: (1) thirty-three exhibits that include email correspondence and various documents regarding the Underlying Action; (2) the Arizona Court of Appeals opinion in *Torres* affirming the dismissal of Avco and Lycoming; (3) defendants' consideration of bringing claims against Arthur Wolk and The Wolk Law Firm; (4) defendants' allegations of unauthorized practice of law by Ms. Turner; (5) emails written by the defendants that the Turners claim are "indicative of [the defendants'] state of mind toward Ms. Turner"; (6) evidence related to EEOC proceedings initiated by Ms. Turner during the Underlying Action; and (7) evidence of a "secure email" from Mr. Kraft that was not produced.

The Turners argue that, without this evidence, they were prevented from presenting evidence "damning to Defendants," making it "virtually impossible" to prove their case.[90]  For much of the evidence they list as erroneously excluded, the Turners offer no explanation as to why the exclusion was erroneous or harmful.

<u>Evidence that Was Not Excluded</u>

Exhibits 58, 59, 60a, 94, 109a, 110, 114a, 120, 121, 123, and 128 were not ruled inadmissible.  Each was listed on the parties' final joint exhibit list.[91]  One of the exhibits, Exhibit 60a, was proffered by Avco and admitted at trial.[92]

<u>Evidence that Was Excluded</u>

The Turners provide blanket assertions that the exhibits listed in their motion "were each highly probative of Defendants' lack of probable cause and improper purpose" and that each "showed the Defendants' state of mind at the time they were pursuing the

malicious action against Ms. Turner."[93]   Aside from these broad characterizations, the Turners explain how only some of the excluded evidence is probative of either issue.

"Improper Purpose" Evidence

As explained, the Turners assert that all of the excluded evidence is probative of improper purpose.[94]   But, the exclusion of "improper purpose" evidence cannot warrant a new trial.  The jury never reached that issue.  *See Duchesneau v. Cornell Univ*., 559 F. App'x 161, 164–65 (3d Cir. 2014) ("A motion for a new trial on issues that a jury did not reach will not be granted." (quoting *Farra v. Stanley–Bostitch, Inc.,* 838 F. Supp. 1021, 1027 (E.D. Pa.1993))).

The Turners explicitly assert that certain excluded evidence was probative of improper purpose.  For other evidence, they imply it is probative of improper purpose by characterizing it as indicative of the defendants' "malicious" or "wrongful" intent in suing Ms. Turner.  This evidence includes: evidence regarding the defendants' discussions of potential claims against Arthur Wolk or The Wolk Law Firm;[95] the defendants' alleged accusations that Ms. Turner engaged in the unauthorized practice of law in Florida;[96] emails among the defendants containing distasteful, sophomoric comments the defendants made about Ms. Turner and her case strategy;[97] Exhibit 1, November 2017 emails in which Mr. Canfield discusses staffing of outside counsel other than Ms. Turner on various litigation matters;[98] Exhibit 5, a July 2020 email from Blank Rome attorney Elaine Solomon to Mr. Smith explaining that Avco had asked her to research potential injunctive relief against Ms. Turner;[99] Exhibit 6, a subsequent email from Ms. Solomon asking if Mr. Smith and Ms. Ward were available to work on Avco's potential case against

19

Ms. Turner;[100] and Exhibit 66, email correspondence in which Mr. Cairns sends Mr. Smith a photo of a prison cell.[101]

The Turners list other evidence in their motion for which they provide no information or argument as to how the evidence is relevant to either Dragonetti element. We assume that they contend the following evidence goes to improper purpose: evidence of EEOC proceedings Ms. Turner initiated during the course of the Underlying Action in which she alleged, *inter alia*, that Avco brought the Underlying Action as retaliation for a 2017 letter[102] Ms. Turner sent to Mr. Canfield alleging he had discriminated against her on the basis of her age and sex;[103] Exhibit 4, Avco's position statement responding to the allegations set forth in Ms. Turner's EEOC charge;[104] Exhibit 32, emails sent between the Attorney Defendants regarding Ms. Turner's discrimination allegations and reasons for leaving Avco;[105] Exhibit 107, which includes emails sent between Mr. Cairns, Ms. Ward, and Mr. Smith about an upcoming hearing in which Mr. Cairns states he is "happy for [Ms. Turner] to run her mouth" to Judge Wolson;[106] Exhibit 117, which includes an email from Mr. Cairns to Mr. Smith stating that Mr. Canfield had the authority to terminate Ms. Turner's representation of Avco,[107] and Exhibits 141 and 142, declarations Mr. LaSala submitted in support of Avco's motion to quash several deposition notices served by Ms. Turner in the Underlying Action.[108]

As this evidence is probative only of the defendants' improper purpose in bringing and maintaining the Underlying Action, its exclusion—erroneous or otherwise—cannot form the basis for a new trial because the jury never reached the issue of improper purpose. *See Duchesneau*, 559 F. App'x at 164–65.

"Lack of Probable Cause" Evidence

The jury did find that the defendants had probable cause.[109]  Our rulings on evidence probative of that issue are relevant to whether the Turners deserve a new trial. *See id.*

The only excluded evidence the Turners explicitly argue is probative of lack of probable cause is Exhibit 94, an email exchange between Mr. Canfield and Mr. Cairns concerning the *Torres* decision.[110]  As noted above, Exhibit 94 was not excluded.[111] Other evidence we infer that the Turners contend is probative of lack of probable cause is evidence relating to the Arizona Court of Appeals ruling in *Torres* affirming Avco's dismissal from that case;[112] Exhibit 115, an email from Mr. Cairns to Mr. Smith discussing potential settlement of the Underlying Action;[113] Exhibit 136, email correspondence relating to Judge Wolson's granting summary judgment for Ms. Turner in the Underlying Action;[114] Exhibits 157 and 158, Judge Wolson's order and memorandum opinion denying Avco's motion for preliminary injunction in the Underlying Action;[115] and, testimony relating to a purported "secure email" from Mr. Kraft that was never produced.[116]

*Evidence Relating to the Arizona Court of Appeals Decision in Torres*

The defendants filed a motion *in limine* to preclude "any evidence or argument" regarding the Arizona Court of Appeals opinion[117] in *Torres* and related evidence.[118]  We granted that motion in part and denied it in part.[119]  We precluded the Turners from introducing the opinion, but did not preclude them from showing that Avco had been dismissed as a defendant in *Torres* before Ms. Turner entered her appearance.[120]

The Turners challenge that order, but do not articulate how the Arizona Court of Appeals opinion or any evidence related to it is relevant.  They do not say what they

wanted it to show.  In the absence of any other explanation, we can only infer, based on their response to the defendants' motion *in limine* and their current arguments as to other evidence cited in the instant motion, that they wanted to show the jury that there was no probable cause to bring the Underlying Action because Avco had been dismissed from *Torres* before Ms. Turner entered her appearance, and Avco did not manufacture the turbocharger that allegedly caused the crash at issue.[121]

Judge Wolson and the Third Circuit Court of Appeals were aware that Avco and Lycoming had been dismissed from *Torres* and that the dismissal was later affirmed.  *See Avco Corp.*, 2021 WL 3722274, at *2; *Avco Corp.*, 2024 WL 185678, at *1 n.2.  Judge Wolson pointed out that "[t]he fact that the *Torres* court had dismissed Avco from the matter by the time [the *Torres*] plaintiffs engaged Ms. Turner does not change th[e] fact" that "she represented clients whose interests were materially adverse to Avco's interests." *See Avco Corp.*, 2022 WL 17251250, at *2–3.  The Third Circuit observed that the dismissal was on appeal throughout the entire period Ms. Turner worked on *Torres*, "creating a possibility that [it] could be brought back into the case" while she was still representing the opposing party.  *See Avco Corp.*, 2024 WL 185678, at *1.  The Third Circuit noted that there was "no question Turner's representation of the *Torres* plaintiffs was adverse to Avco."  *Id.* at *2 n.4.  Neither court relied on the dismissal in determining that summary judgment should have been granted in Ms. Turner's favor.

Nor did either court mention the turbocharger in explaining why Avco's claim failed.  On remand, Judge Wolson found for Ms. Turner because Avco had not "offered any evidence to tie Ms. Turner's limited engage[ment] in the *Torres* matter to the work that she did for Avco."  *See Avco Corp.*, 2022 WL 17251250, at *3.  The turbocharger is not

mentioned anywhere in Judge Wolson's opinion.  On appeal, the Third Circuit held that Avco had failed to establish the "substantial relationship" element of its breach of fiduciary duty claim because it failed to identify "evidentiary support of a relationship between the confidential information Turner obtained from Avco and the substance of the work she did for *Torres*[.]"  *See Avco Corp.*, 2024 WL 185678, at *3.  The Third Circuit did not cite the turbocharger as the reason Avco was unable to establish the necessary relationship.

The Arizona Court of Appeals decision risked causing confusion under Rule 403. The jury could have considered that the decision meant Ms. Turner had no fiduciary duty to Avco because it had been dismissed from that case.

Because the Arizona Court of Appeals decision was not probative of whether Avco and the Attorney Defendants had probable cause to bring the Underlying Action and it could have confused and misled the jury, its exclusion was not erroneous.

Nor was it harmful.  Beyond their generic declaration that "[t]he cumulative effect of the District Court's exclusion decisions" regarding all of the evidence that they argue was erroneously excluded "was highly prejudicial to [the Turners] and severely damaged their case[,]"[122] the Turners do not explain how the exclusion of this particular evidence was prejudicial.  Nor could they.  The Turners were permitted to—and did, repeatedly— tell the jury that Avco had been dismissed from *Torres* before Ms. Turner entered her appearance.[123]  They also elicited testimony that Avco did not make the turbocharger at issue in *Torres*.[124]  The Attorney Defendants and Professor Moore testified that they were aware of these facts when researching the viability of Avco's breach of fiduciary duty claim,[125] and they explained that those facts did not alter their belief that the claim was viable.[126]

*Exhibit 115*

The Turners challenge the exclusion of Exhibit 115, which they characterize as an email from Mr. Cairns to Mr. Smith regarding "getting plaintiff Veronica Turner to settle the underlying claim[.]"[127]

In the message, Ms. Crikelair writes to Mr. Cairns, Mr. Smith, and Ms. Ward describing an email written by Ms. Turner while she was representing Avco that demonstrated that she had attempted to settle cases brought by The Wolk Law Firm against Avco, including *Torres*, before she represented Avco's adverse party in that same action.[128]  In response, Mr. Smith suggests that the email "might be what actually gets [Turner] to settle" the Underlying Action.[129]

The Turners imply that Avco's apparent interest in settlement meant they believed the Underlying Action was meritless.  Not so.  As we noted when this issue was raised during the parties' arguments on their motions *in limine*, cases are settled for many reasons.[130]  We added that such evidence shows that Avco "want[ed] to buy out of it because of the cost to litigate, not because they th[ought] they [were] going to lose."[131]  Nothing about Exhibit 115 suggests the defendants wanted to settle the case because they doubted its viability.  On the contrary, as Ms. Crikelair suggests in the email, the document likely would have strengthened Avco's claim.

The exclusion of Exhibit 115 was proper and not prejudicial to the Turners.  It does not warrant a new trial.

*Exhibit 136*

The Turners complain that we erroneously excluded Exhibit 136, email correspondence between the Attorney Defendants, Mr. Cairns, and another Blank Rome

attorney relating to Judge Wolson's opinion of August 23, 2021.[132]    In the communications, Ms. Crikelair objectively summarizes the opinion and the order.[133] Following the summary, Ms. Crikelair states her opinions on the ruling and identifies certain portions that she believes may be "helpful" to Avco's position.[134]

Exclusion of the email was not harmful.  The jury was aware that the Underlying Action was decided in Ms. Turner's favor.  At trial, Ms. Ward testified that Avco had been denied summary judgment twice in the Underlying Action and that it "lost the case" entirely.[135]

*Exhibits 157 and 158*

Exhibits 157 and 158 are Judge Wolson's order and accompanying memorandum denying Avco's motion for preliminary injunction in the Underlying Action.[136]  The Turners do not explain how this evidence was relevant to their Dragonetti claim or why its exclusion was improper.

If they are suggesting that Judge Wolson's denial of Avco's request for a preliminary injunction is evidence that the defendants had no probable cause to bring the Underlying Action, they are wrong.  The denial of the preliminary injunction does not inform whether the defendants had probable cause to file the breach of fiduciary duty action.  Judge Wolson denied the request because at the time Avco requested the injunction, Ms. Turner "[was] not representing anyone in a case against Avco, or even in a case that could harm Avco's interests."[137]  Judge Wolson explained that "Avco's apprehensions, though understandable, d[id] not establish the immediate irreparable harm needed to support the extraordinary remedy of injunctive relief before a trial on the merits."[138]

Whether Ms. Turner was actively involved in litigation adverse to Avco at that time is not probative of whether the defendants had probable cause to believe she breached a fiduciary duty to Avco in the *Torres* case. Indeed, Judge Wolson noted in the first paragraph of his opinion that "it is possible that [Ms. Turner] breached a fiduciary duty to Avco" with her work in *Torres.*[139]

Exclusion of these exhibits was neither erroneous nor prejudicial to the Turners.

### *"Secure Email" Testimony*

The Turners argue that we erred in refusing to allow them to question Ms. Crikelair at trial about a "'secure email' from Mr. Kraft that was never produced by Defendants."[140] The Turners argue that the purported email is referenced in other exhibits in which the Attorney Defendants "indicated Kraft was not 'helpful' and that he was essentially unwilling to cooperate."[141]

At trial, the Turners' counsel questioned Ms. Crikelair about the email.[142] She testified that it was an encrypted email Mr. Kraft sent to the Attorney Defendants that "was a little bit difficult to open, because it had come in a secure format" due to Avco's internal security system's encryption of messages sent to external addresses.[143] Ms. Crikelair testified that she was ultimately able to open and review the message.[144]

The Turners argue that "[t]he failure to produce this email was highly suspect, and [the Turners] should have been permitted to question and impeach Defendant Crikelair on it."[145] In response, the Attorney Defendants point out that they have "explained to [the Turners'] counsel (and this Court) on multiple occasions[] [they] produced all available communications about the secure email and tried to recover the secure email and its contents—but were unable to do so."[146] You cannot produce what you do not have or

cannot find.  The Turners do not explain how the lack of production is "highly suspect." Nor do they point to any evidence of what the lost email may have said that would have supported their case, let alone how that absence was harmful to the extent that they deserve a new trial.

The exclusion of this evidence, like all of the other exclusions the Turners contend were erroneous or harmful, does not warrant a new trial.

### Expert Testimony of Lawrence Stengel

The Turners argue that the expert testimony of Lawrence Stengel, former Chief Judge of the United States District Court for the Eastern District of Pennsylvania, should have been excluded.[147]  They argue Mr. Stengel should have been disqualified as an expert witness due to his former role as a federal judge and current role as a special master in federal courts.[148]

The Turners moved before trial to disqualify Mr. Stengel.[149]  We denied the motion to the extent it sought to disqualify Mr. Stengel on the grounds that his testimony would violate the Code of Conduct for United States Judges.[150]  That ruling specifically "d[id] not preclude the [Turners] [from] filing a *Daubert* motion to preclude the testimony[.]"[151]

The Turners later filed a *Daubert* motion on the grounds that Mr. Stengel's opinions "usurp the trial court's role by opining on the law," were not relevant, did not "fit" the facts of the case, and were unfairly prejudicial.[152]  We limited Mr. Stengel's testimony, permitting him to opine only that (1) the Attorney Defendants appropriately researched and prepared their legal claims, reasonably relied upon Avco's representations of the factual basis for those claims, and conducted a reasonable prosecution of the Underlying Action; and (2) the Attorney Defendants conformed to the appropriate standard of care.[153]

27

The Turners do not complain about the substance of Mr. Stengel's testimony. They reiterate their argument that he was "improperly permitted to testify" in violation of Canon 2 of the Code of Judicial Conduct.[154]

The Turners argue that, as a former federal judge and a sitting special master in several federal courts, including the United States District Court for the Eastern District of Pennsylvania, Mr. Stengel "is held to the same standards as sitting federal judges under Canon 2[.]"[155]

The Code of Conduct for United State Judges ends with a section entitled "Compliance with the Code of Conduct." It provides, as relevant, that a retired judge should comply with the Code if he is "retired under [the "retirement on salary" provision set forth in] 28 U.S.C. § 371(b)," or "is recalled to judicial service[.]"[156]

Mr. Stengel is not "retired on salary," having resigned his judicial commission. Nor has he been recalled. Therefore, the Code does not apply to him as a former judge.

Mr. Stengel's service as a special master is treated differently. The Compliance section makes clear that, in regard to "a person who is appointed to act . . . as a special master[,]" the code applies to that person "[w]hile acting in [that] capacity[.]"[157] Mr. Stengel has not been appointed as a special master in this case. He was not acting "in [the] capacity" of a special master when he testified. Therefore, the Code did not apply.

### Expert Testimony of Timothy Pratt

The Turners claim that the testimony of attorney Timothy Pratt, who spent eleven years as in-house counsel and a corporate officer at Boston Scientific,[158] was not relevant, did not "fit" the case, was not helpful to the jury, and was unfairly prejudicial.[159]

Contrary to the Turners' statement that we "denied" their motion to preclude Mr. Pratt's testimony,[160] we granted it in part.  We permitted Mr. Pratt to opine only on whether Avco acted consistent with the industry standards that a corporation may take to protect its confidential information and trade secrets, and whether Avco acted in reliance upon the advice of counsel given after full disclosure of all relevant facts within its knowledge and information.[161]  We precluded his testimony that Avco had probable cause to institute and continue the Underlying Action; did not engage in the wrongful use of civil proceedings; and did not act in a grossly negligent manner.[162]  We also barred him from opining on Ms. Turner's animus toward Mr. Canfield or her claim that Mr. Canfield was "out to get her," and from defining "gross negligence" and "negligence."[163]

At trial, Pratt testified within the parameters of our ruling.[164]  Now, as in their motion *in limine*, the Turners argue that "[t]he issues on which Mr. Pratt testified had nothing to do with [the Turners'] claims under the Dragonetti statute, or any defense available to [Avco] under that statute," and that "[h]is testimony did nothing but allow the jury to infer (incorrectly) that an 'expert attorney' believed [Avco] had not violated the Dragonetti statute."[165]

Under the Dragonetti Act, a party has probable cause when it "reasonably believes in the existence of facts upon which the claim is based" and "believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information."  *See* 42 Pa. Cons. Stat. § 8352(2).  The reasonableness of Avco's conduct, including that of its in-house attorneys involved with the claims brought against Ms. Turner in the Underlying Action, and whether they

acted in good faith in relying on the advice they received from counsel, was relevant and fit the case.

Furthermore, the Turners were not harmed by Mr. Pratt's testimony.  The jury was instructed that it was "not bound" to accept what he opined merely because he was an expert.[166]    Pratt's limited testimony was relevant, not prejudicial, and properly circumscribed.

### Jury Instruction on the "Good Faith" Defense

The Turners challenge the jury instructions addressing the good faith defense. They argue we should have added, "The defense does not relieve the attorney from the obligation of conducting a due diligence assessment. And if the lack of factual support for the litigation is apparent or could have reasonably been discovered, the good faith defense does not shield the attorney."[167]

In assessing whether an instruction correctly states the law, the challenged instruction must be considered within the context of the entire charge.  *See Ponzini v. Monroe Cnty.*, 789 F. App'x 313, 316 (3d Cir. 2019) (citing *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009) (quoting *United States v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998))).  Only if the instruction confused or misled the jury will it justify a new trial.  *See id*.  Here, it did neither.

The instruction was an accurate statement of the law and required no elaboration. The proposed additional language was unnecessary and its omission did not render the instruction misleading or confusing.  Mirroring the Dragonetti Act, we instructed that the Attorney Defendants "acted with probable cause if the defendant reasonably believed in the existence of facts upon which the claim was based, and either reasonably believed

that under those facts the claim may have been valid under the existing or developing law, or . . . [a]s to Mr. Smith, Ms. Ward and Ms. Crikelair, he or she, as a lawyer of record, believed in good faith that his or her procurement, initiation, or continuation of the civil proceeding was not intended to merely harass or maliciously injure Ms. Turner."[168]

The instructions, in the context of the whole charge, conveyed that an attorney must do more than merely rely on the client's word and must conduct his or her own inquiry as to the validity of the claim.  That the jury instructions on the "good faith" defense did not elaborate that an attorney must conduct a due diligence assessment did not render the instruction misleading or inaccurate.  The instruction was clear.

### Denied Request for New Link to Already-Produced Documents

The Turners complain that the Special Master, former Magistrate Judge Reuter, denied their request for the Attorney Defendants' link originally provided to Judge Reuter for *in camera* review.[169]  They ask that we reverse Judge Reuter's order denying their request and order the production of the link, which the Turners aver they needed so they could compare the documents provided to Judge Reuter with the documents the Attorney Defendants produced after Judge Reuter overruled the Attorney Defendants' "work product" objections.[170]

The only ground the Turners identify for their "legitimate[] concern[] that they were not provided with all relevant documents" were purported "discrepancies" in the Attorney Defendants' document production.[171]  These "discrepancies" are outlined in the Turners' counsel's August 6 and 7, 2024 letters to Judge Reuter explaining that, while the Attorney Defendants' production for *in camera* review consisted of 7,467 pages with Bates numbers BRPRIV_000001 to BRPRIV_007467, the subsequent production of documents

consisted of 92,274 pages with Bates numbers BR023721 to BR115995.[172]  The Turners'
counsel characterized this discrepancy as a "bait and switch" that left him with "no
confidence [the Turners] ha[d] received all the communications to which [they] [were]
entitled."[173]  He also stated that the documents in the latter production were not keyed to
the Bates numbers in the privilege log that the Attorney Defendants had previously
provided the Turners, and that no new log had been provided.[174]

In response, the Attorney Defendants explain that they "sent [the Turners] multiple
privilege logs identifying every document included in the *in camera* production with
information allowing [the Turners] to cross-reference the documents sent to the Special
Master with the versions produced to [the Turners]" and point out that the Turners "have
not identified a single document on either log that was not produced pursuant to the
Special Master's Order."[175]  The Turners have offered no response to this observation.

Furthermore, the Attorney Defendants already explained that the Turners were
mistaken, as "[b]oth the Special Master and the [Attorney] Defendants have consistently
identified the 7,467 figure as representing the number of *entries* or *documents* on the
[Attorney] Defendants' privilege log that were being withheld, not the number of *pages* of
documents."[176]  They also explained that "[w]hen ordered to produce the 7,467
*documents*, . . . [they] did so on August 4, 2024."[177]  The Attorney Defendants clarified
that "in addition to producing the exact same documents to all parties, [they] voluntarily
provided an updated version of their privilege log to [the Turners] on August 5, 2024, that
cross-references the 7,467 entries with the new Bates numbers on the production
versions," and that they did so "to clear up any confusion about what was logged and
what was produced."[178]

The Turners now argue that their case was harmed because "they were never given the opportunity to compare the documents the [Attorney Defendants] submitted to the Special Master with the documents [the Turners] received after the Special Master denied the [Attorney Defendants'] 'work product' objections," and they were "legitimately concerned that they were not provided with all relevant documents by the [Attorney Defendants], and wanted to compare the submission to the Special Master with the documents they received."[179]

The Turners ignore that four months before trial, the Attorney Defendants provided a thorough response to their concerns. This issue, along with the "secure email" evidence discussed above, is the second argument the Turners make for a new trial based on an uncorroborated hunch that evidence they cannot identify may have been withheld from them. It is also a non-issue that was addressed months before trial began, and it did not harm the Turners' case.

## Sufficiency of the Evidence

The Turners argue the jury's verdict was not supported by the evidence. We have already discussed the substantial evidence supporting the jury's verdict when we considered the Turners' arguments in support of their motion for JMOL.[180]

## Conclusion

There is more than sufficient evidence to support the jury's verdict and there were no errors. Therefore, we deny the Turners' motion for judgment as a matter of law and motion for a new trial.

---

[1] Ms. Turner's husband, Kevin Turner, asserts a loss of consortium claim.

[2] *See* Defs. Avco Corp. & Textron Inc.'s Statement of Undisputed Facts in Supp. of Their Mot. for Summ. J. ("Avco's SUF") ¶ 1, Dkt. No. 164. Facts cited from the defendants' respective statements of undisputed facts submitted in support of their motions for summary judgment were not materially disputed

in the Turners' counterstatements thereto. *See* Pls.' Statement of Disputed Facts in Resp. to Defs. Avco Corp. and Textron Inc.'s Statement of Undisputed Facts, Dkt. No. 190; Pls.' Statement of Disputed Facts in Resp. to the Individual Defs.' Statement of Undisputed Facts, Dkt. No. 191.

[3] Avco's SUF ¶ 2.

[4] *See id.* Ex. 4, Mot. for Temporary Admission Pro Hac Vice Veronica Saltz Turner, Dkt. No. 166-4, Ex. 5, 2d Am. Compl., *Torres v. Honeywell, Inc*, No. CV2017-007542 (Ariz. Super. Ct. July 31, 2018), at 1, Dkt. No. 166-5.

[5] *See id.* Ex. 5, 2d Am. Compl., *Torres v. Honeywell, Inc*, No. CV2017-007542 (Ariz. Super. Ct. July 31, 2018), ¶¶ 25, 66–67, 93, 95–97, Dkt. No. 166-5.

[6] *See id.* Ex. 4, Mot. for Temporary Admission Pro Hac Vice Veronica Saltz Turner, Ex. 1.

[7] *See id.* ¶ 209.

[8] *See id.* ¶ 11; Pls.' Mem. in Response to Defs.' Mot. in Lim. to Preclude Evid. of the Ct. App. Op. in the *Torres* Ariz. Case, Ex. 1, at 3, Dkt. No. 282-1. The Arizona Court of Appeals affirmed the dismissal, finding that Avco "presented undisputed evidence" that it did not manufacture, install, sell, or deliver the turbocharger at issue. *Id.* at 6.

[9] *See id.* ¶ 12.

[10] *See* Individual Defendants' Statement of Undisputed Facts ("Att'y Defs.' SUF") ¶¶ 18–19.

[11] *See* Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 171:3–7.

[12] *See* Att'y Defs.' SUF ¶ 31, Dkt. No. 169-2.

[13] *See id.* ¶¶ 31–34.

[14] *See id.*

[15] *See id.* Ex. 1, Compl.; *Avco Corp. v. Turner*, 2:20-cv-04073 (E.D. Pa. 2020).

[16] *See id.* ¶ 144 & Ex. 96, Plaintiff Avco Corp.'s Mot. for a Preliminary Injunction, at 1, Dkt. No. 171-51.

[17] *Id.* ¶ 176. *See Avco Corp. v. Turner*, No. 2:20-cv-04073, 2020 WL 5630543, at *4 (E.D. Pa. Sept. 21, 2020).

[18] Judge Wolson granted summary judgment in Ms. Turner's favor on the basis that Avco had failed to establish a question of fact with respect to whether Ms. Turner had suffered an actionable injury. *See id.* at *5.

[19] The Third Circuit Court of Appeals remanded the case for determination of whether there was a dispute of fact as to the breach of a fiduciary relationship. *See Avco Corp. v. Turner*, No. 21-2750, 2022 WL 2901015, at *4 (3d. Cir. July 22, 2022).

[20] The Third Circuit affirmed Judge Wolson's granting of summary judgment in Ms. Turner's favor on the basis that Avco had not identified evidence that her adverse representation in *Torres* was "substantially related" to her work in her previous representation of Avco. *Avco Corp. v. Turner*, No. 2:20-cv-04073, 2024 WL 185678, at *1 (3d Cir. Jan. 17, 2024).

[21] We refer to Avco Corporation and Textron, Inc. collectively as "Avco."

[22] *See* 2d. Am. Compl. at 18, Dkt. No. 44-2. Ms. Turner initially asserted a claim for civil conspiracy against Avco and the Attorney Defendants in addition to her Dragonetti claim. *See id.* at 20. That claim was dismissed. *See* Order, Dkt. No. 88.

[23] *See* 2d. Am. Compl. at 21, Dkt. No. 44-2.

[24] Order, Dkt. No. 279; Order, Dkt. No. 280; Order, Dkt. No. 281.

[25] *See* Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 132:4–6.

[26] *See, e.g.*, Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 172:12–17, 173:14–16; Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 43:21–23, 142:20–23, 144:25–145:8, 145:13–15, 145:16–146:8, 153:4–18, 153:19–21, 154:10–13.

[27] *See, e.g.*, Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 173:11–13, 173:19–24; Pls.' Ex. 4, Trial Tr. (Dec. 19, 2024) at 26:21-23, 28:24–29:4, 29:6–16, 143:12–144:3, 146:19–147:1, 155:23–156:3, 158:14–16, 158:21–159:7, 160:8–17, 162:21–22, 170:3–16.

[28] *See, e.g.*, Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 175:16–17, 178:18–179:3, 208:24–209:6, 213:5–11.

[29] *Id.* at 213:5–214:2; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 232:2–8, 252:6–14.

[30] Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 232:2–8, 252:6–9.

[31] Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 214:3–6.

[32] *See* Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 57:6–18.

[33] *See id.* at 42:23–43:1.

---

[34] *See, e.g.*, Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 256:25–259:20; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 56:19–59:3.

[35] *See, e.g.*, Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 256:25–257:17; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 59:1–3.

[36] Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 13:10–14.

[37] *See id.* at 22:15–23:1.

[38] *Id.* at 13:25–14:8, 14:18–20.

[39] *See* Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 15:2–16:19; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 245:20–251:22.

[40] *See, e.g.*, Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 5:25–9:21, 10:11–13:6.

[41] *See, e.g.*, Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 98:12–15.

[42] Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 181:25–183:1; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 22:17–23:1, 25:12–14; 134:19–137:9; 172:11–14.

[43] Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 45:25–46:11, 68:21–69:7; 93:24–94:25, 148:9–150:10, 184:25–185:6.

[44] Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 215:10–265:16.

[45] Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 184:25–185:6.

[46] *Id.* at 46:12–25, 148:13–22.

[47] *Id.* at 201:7–10.

[48] Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 22:5–23:1, 133:1–16.

[49] *Id.* at 166:8–14; 171:10–172:14.

[50] Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 46:5–11, 94:1–3, 148:9–12, 184:25–185:6.

[51] *Id.* at 46:12–20, 148:17–22.

[52] *Id.* at 149:11–25.

[53] *See* Pls.' Mot. at 5, 6.

[54] See Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 189:13–190:1.

[55] Pls.' Ex. 4,Trial Tr. (Dec. 9, 2024) at 243:21–245:11).

[56] Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 180:6–19; Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 126:11–18; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 229:15–230:10).

[57] See Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 41:18–42:9, 43:21–44:12; Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 181:20–182:4.

[58] Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 59:24–60:7. Avco also moved for judgment as a matter of law under Rule 50 at the close of evidence. *See id.* at 45:12–52:19. The Attorney Defendants renewed their motion for judgment as a matter of law, *id.* at 52:23–24, which they had first made at the close of the Turners' case in chief. Pls.' Ex. 4,Trial Tr. (Dec. 9, 2024) at 124:5–132:20. These motions were denied. *See id.* at 132:18–20; Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 59:23.

[59] Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 59:24–60:7.

[60] *Id.* at 60:8.

[61] *See* Verdict at 1, 2, Dkt. No. 375.

[62] *See id.* at 2.

[63] *See* Mem. of Law in Supp. of Pls.' Mot. for a New Trial Pursuant to Fed. R. Civ. P. 59 and for J. as a Matter of Law Pursuant to Fed. R. Civ. P. 50 ("Pls.' Mot."),Dkt. No. 379-1.

[64] *See id.* at 38 ("Plaintiffs' motion for judgment as a matter of law should be granted, and a new trial should be granted in this matter. That trial should be limited to the issues of improper purpose, gross negligence, and damages."). Unlike improper purpose and damages, gross negligence is not an unresolved issue. The jury found that none of the defendants acted in a grossly negligent manner in procuring, initiating, or continuing the Underlying Action. *See* Verdict at 1, Dkt. No. 375. The Turners do not argue that the jury's verdict as to gross negligence was unsupported by the evidence or otherwise erroneous. In their reply brief, they omit gross negligence from their list of issues that should be retried. *See* Pls.' Omnibus Reply Mem. in Supp. of Their Mot. for a New Trial Pursuant to Fed. R. Civ. P. 59 and for J. as a Matter of Law Pursuant to Fed. R. Civ. P. 50 ("Pls.' Reply"), at 3, Dkt No. 382 (stating that the new trial "should be limited to the issues of improper purpose and damages.").

[65] *See* Pls.' Mot. at 5 (emphasis removed).

[66] *See id.* at 38 ("Judgment should also be entered on the issue of liability as to Defendants Avco and Textron.").

[67] *See* Defs. James T. Smith, Rebecca D. Ward, and Heidi G. Crikelair's Resp. to Pls.' Mot. for a New Trial Pursuant to Fed. R. Civ. P. 59 and for J. as a Matter of Law Pursuant to Fed. R. Civ. P. 50 ("Att'y Defs.' Resp."), at 4–5, Dkt. No. 381; Defs. Avco Corp. and Textron Inc.'s Mem. In Supp. of Their Opp. to Pls.' Mot. for a New Trial and for J. as a Matter of Law ("Avco's Resp.") at 2, 5–8, Dkt. No. 380-1.

[68] *See* Avco's Resp. at 4–5, Dkt. No. 380-1.

[69] Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 59:24–60:7.

[70] *See* Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 175:16–17, 178:18–179:3, 208:24–209:6, 213:5–11, 256:25–259:20; *See* Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 42:23–43:1, 56:19–59:3.

[71] Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 58:20–59:3.

[72] *See, e.g.*, Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 74:1–7, 80:1–12, 254:7–255:5.

[73] *Id.* at 252:2–9.

[74] *See* Pls.' Mot. at 5–6 (emphasis removed).

[75] *See* Pls.' Reply at 3 (emphasis removed).

[76] *See* Pls.' Mot. at 2, 5–10.

[77] *See* Att'y Defs.' Resp., at 6–9, 33–38, Dkt. No. 381 (listing a "limited selection" of the evidence and trial testimony they contend is sufficient proof from which the jury could reasonably have rendered its verdict); Avco's Resp. at 24–28, Dkt. No. 380-1.

[78] *See supra*, Factual Background, at 4–8

[79] *See id.*

[80] *See id.*

[81] *See id.*

[82] *See id.*

[83] *See id.*

[84] *See id.*

[85] *See* Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 131:18–132:3.

[86] *See id.* at 132:4–6.

[87] *See* Verdict at 1, 2, Dkt. No. 375.

[88] *See id.* at 2, Dkt. No. 375.

[89] *See* Pls.' Mot. at 10, 11, 17.

[90] *See id.* at 11.

[91] *See* Avco's Resp. Ex. C, Dkt. No. 380-4.

[92] *See* Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 40:5, 44:25–45:1.

[93] Pls.' Mot. at 17.

[94] *See id.* 11, 17.

[95] *See id.* at 11. The Turners describe this evidence as "directly relevant to Defendants' improper purpose in suing Ms. Turner[.]" *See id.*

[96] *See* Pls.' Mot. at 11. This evidence includes Exhibits 135 and 156. *See* Pls.' Ex. E – 135, Dkt. No. 379-33; Pls.' Ex. E – 156, Dkt. No. 379-37. The Turners describe this evidence as "directly relevant to Defendants' malicious intent in prosecuting the [Underlying] [A]ction against Ms. Turner[.]" *See* Pls.' Mot. at 11.

[97] *See* Pls.' Mot. at 11–12. This evidence includes Exhibits 96, 195, 196, 197, and 198. *See* Pls.' Ex. E – 96, Dkt. No. 379-21; Pls.' Ex. E – 195, Dkt. No. 379-41; Pls.' Ex. E – 196, Dkt. No. 379-42; Pls.' Ex. E – 197, Dkt. No. 379-43; Pls.' Ex. E – 198, Dkt. No. 379-44. The Turners describe this evidence as "directly relevant to Defendants' malicious intent in prosecuting the action against Ms. Turner." *See* Pls.' Mot. at 11–12.

[98] *See* Pls.' Mot. at 12; Pls.' Ex. E – 1, Dkt. No. 379-11. In a November 2017 letter to Mr. Canfield withdrawing as counsel for Lycoming, Ms. Turner cites her replacement as lead trial counsel on two of these matters as part of the basis for her decision to withdraw. *See* Pls.' Ex. E – 4, at 15, Dkt. No. 379-12. The Turners describe this evidence as "directly relevant to the wrongful intent of Gregory Canfield in procuring the false and baseless action against Ms. Turner." Pls.' Mot. at 12 (emphasis removed).

[99] *See* Pls.' Mot. at 13; Pls.' Ex. E – 5, Dkt. No. 379-13. The Turners describe this evidence as "directly relevant to Defendants' improper purpose[.]" Pls.' Mot. at 13.

[100] *See* Pls.' Mot. at 13; Pls.' Ex. E – 6, Dkt. No. 379-14. The Turners describe this evidence as "a highly probative example of the true – and *improper* – purpose of Defendants Textron and Avco in pursuing their baseless action against Ms. Turner from its inception[.]" Pls.' Mot. at 13.

[101] *See* Pls.' Mot. at 13; Pls.' Ex. E – 66, Dkt. No. 379-19. The Turners describe this evidence as "a commentary on what [Mr. Cairns] wants to see happen to Ms. Turner[.]" Mot. at 14.

[102] *See* Pls.' Ex. E – 4, at 15–18, Dkt. No. 379-12.

[103] *See* Pls.' Mot. at 12; Order, Dkt. No. 350.

[104] *See* Pls.' Mot. at 12–13; Pls.' Ex. E – 4, Dkt. No. 379-12.

[105] *See* Pls.' Mot. at 13; Pls.' Ex. E – 32, Dkt. No. 379-15.

[106] *See* Pls.' Mot. at 14–15; Pls.' Ex. E – 107, Dkt. No. 379-23.

[107] *See* Pls.' Mot. at 15; Pls.' Ex. E – 117, Dkt. No. 379-35.

[108] *See* Pls.' Mot. at 16; Pls.' Exs. E – 141, E – 142, Dkt. Nos. 379-35, 379-36.

[109] *See* Verdict at 2, Dkt. No. 375.

[110] *See* Pls.' Mot. at 14 (stating that Exhibit 94 "was extremely probative of Defendants' knowledge that, given the [Arizona Court of Appeals] ruling [in *Torres*], they had no probable cause to continue the litigation").

[111] *See* Avco's Resp. Ex. C, Dkt. No. 380-4.

[112] *See* Pls.' Mot. at 11; Order, Dkt. No. 325.

[113] *See* Pls.' Mot. at 15; Pls.' Ex. E – 115, Dkt. No. 379-27.

[114] *See* Pls.' Mot. at 16; Pls.' Ex. E – 136, Dkt. No. 379-34.

[115] *See* Pls.' Mot. at 16; Pls.' Exs. E – 157, E – 158, Dkt. No. 379-38–379-39.

[116] *See* Pls.' Mot. at 16; Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 19:18–20:20.

[117] *See* Pls.' Mem. in Response to Defs.' Mot. in Lim. to Preclude Evid. of the Ct. App. Op. in the *Torres* Ariz. Case, Ex. 1, Dkt. No. 282-1.

[118] *See* Individual Defs.' Mot. in Lim. No. 2 to Preclude Any Evid. or Arg. Regarding the Ariz. Ct. App. Op. in *Torres* Ariz., Dkt. No. 210; Defs.' Avco Corp. and Textron, Inc.'s Mot. to Join Individual Defs.' Mot. in Lim. No. 2 to Preclude Any Evid. or Arg. Regarding the Ariz. Ct. App. Op. in *Torres* Ariz., Dkt. No. 240.

[119] *See* Order, Dkt. No. 325.

[120] *See* Order, Dkt. No. 325.

[121] In their opposition to the defendants' motion *in limine* related to the Arizona Court of Appeals decision in *Torres*, the Turners stated that the opinion "is relevant . . . because Gregory Canfield was aware of the fact (discussed in the opinion) that Avco had presented 'undisputed evidence' a year before Ms. Turner was involved in *Torres* that it neither manufactured or installed the turbocharger. *See* Pls' Resp. to Mot. in Lim. No. 2, at 4–5, Dkt. No. 282. The Turners characterize Exhibit 94, an email from Mr. Canfield in which he mentions the *Torres* decision, as "extremely probative of Defendants' knowledge that, given the ruling, they had no probable cause to continue the litigation." *See* Pls.' Mot. at 14. As explained above, Exhibit 94 was not excluded. *See* Avco's Resp. Ex. C at 25, Dkt. No. 380-4.

[122] Pls.' Mot. at 11 (emphasis removed).

[123] Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 52:16–18; Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 180:6–19; Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 126:11–18.

[124] Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 214:15–215:9; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 7:8–14. The Turners themselves point out that there was "more than ample evidence" admitted to prove lack of probable cause, including evidence that Avco "neither designed, manufactured nor installed the turbocharger on the accident engine" in *Torres*. *See* Pls.' Mot. at 6 (citing Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 214:15–215:9; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 7:8–14).

[125] See Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 180: 6–19, 189:13–190:1; Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 126:11–18; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 229:15–230:10).

[126] Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 181:20–182:4. *See* Pls.' Ex. 5, Trial Tr. (Dec. 10, 2024) at 41:18–42:9, 43:20–44:12.

[127] Pls.' Mot. at 15.

[128] *See* Pls.' Ex. E – 115, Dkt. No. 379-27.

[129] *See id.*

[130] *See* Pls.' Ex. 4, Trial Tr. (Dec. 2, 2024) at 56:6–9.

[131] *See id.* at 56:19–21.

[132] *See* Pls.' Mot. at 16; Pls.' Ex. E – 136, Dkt. No. 34.

[133] *See* Pls.' Ex. E – 136, Dkt. No. 34.

[134] *See id.* at 2, Dkt. No. 34.

[135] *See* Pls.' Ex. 3, Trial Tr. (Dec. 6, 2024) at 195:2–14.

---

136 *See* Pls.' Ex. E – 157, Dkt. No. 379-38; Pls.' Ex. E – 158, Dkt. No. 379-39.

137 *See* Pls.' Ex. E – 158, at 1, Dkt. No. 379-39.

138 *See id.*, at 7, Dkt. No. 379-39.

139 *See* Pls.' Ex. E – 158, at 1, Dkt. No. 379-39.

140 Pls.' Mot. at 16–17; Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 19:18–20:20.

141 Pls.' Mot. at 16 (citing Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 20:3–20).

142 Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 19:18.

143 *Id.* at 19:18–20:20.

144 *Id.* at 20:3–5.

145 Pls.' Mot. at 17.

146 Att'y Defs.' Resp. at 20 (citing Pls.' Ex. 2, Trial Tr. (Dec. 5, 2024) at 59:12–24 (explaining that the Attorney Defendants were unable to retrieve the secure email in order to produce it, and had informed the Turners' counsel of such).

147 Pls.' Mot. at 20–24.

148 *Id.*

149 *See* Pls.' Mem. of Law in Supp. of Pls.' Mot. to Disqualify Lawrence F. Stengel, Esq. as an Expert Witness on Behalf of the Individual Defs., Dkt. No. 135-1.

150 *See* Order, Dkt. No. 139.

151 *See id.*

152 *See* Pls'. Mem. of Law in Supp. of Their Mot. to Preclude or Limit the Proposed Expert Test. of Lawrence F. Stengel, at 4, 7, 8, Dkt. No. 160-1.

153 *See* Order at 1, Dkt. No. 358 (citing Pls'. Mem. of Law in Supp. of Their Mot. to Preclude or Limit the Proposed Expert Test. of Lawrence F. Stengel, Ex. "Expert Report of Lawrence F. Stengel," at 2, Dkt. No. 135-2).

154 *See* Pls.' Mot. at 24.

155 Pls.' Mot. at 20.

156 *See* Code of Conduct for United State Judges, Compliance with the Code of Conduct at (C).

157 *See id.* at (B)(1).

158 *See* Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 203:10–23.

159 Pls.' Mot. at 25.

160 *See id.* at 28.

161 *See* Order, Dkt. No. 360.

162 *See id.*

163 *See id.*

164 *See* Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 209:8–214:25. The Turners did not test Mr. Pratt's qualifications at trial, *see id.* at 208:14–209:6, object to any question asked of him on direct examination, *see id.* at 209:8–214:17, or cross-examine him, *see id.* at 214:23.

165 Pls. Mot. at 25 (emphasis removed).

166 *See* Pls.' Ex. 4, Trial Tr. (Dec. 9, 2024) at 58:10–13; Pls.' Ex. 6, Trial Tr. (Dec. 11, 2024) at 202:19–20.

167 *See* Pls.' Mot. at 18–19; Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 4:14–6:10.

168 *See* Pls.' Mot. at 18–19; Pls.' Ex. 7, Trial Tr. (Dec. 12, 2024) at 132:17–21, 133:1–5.

169 *See* Pls.' Mot. at 32–34.

170 *See* Pls.' Mot. at 33.

171 *See id.* at 33.

172 *See* Pls.' Appeal of Special Master's R. & R. of Aug. 19, 2024 Ex. 3, at 1, Dkt. No. 110-3.

173 *See id.* at 2.

174 *See id.* at 1.

175 Att'y Defs.' Resp. at 31–32 (emphasis removed).

176 *See* Individual Defs.' Opp'n to Pls.' Appeal of Special Master's R. & R. of Aug. 19, 2024, at 3, Dkt. No. 115.

177 *See id.* at 4.

178 *See id.*

179 Pls.' Mot. at 33–34.

180 *See supra*, "Lack of Probable Cause as a Matter of Law," at 14–16.

38